OSAGE OIL & REFINING CO. v. LEE FARM OIL CO. (No. 1761.)

(Court of Civil Appeals of Texas. Amarillo. March 9, 1921. Rehearing Denied April 27, 1921.)

**1. Contracts ⊂⇨324(1)—Party cannot recover for breach and quantum meruit.**

One who has been wrongfully prevented from fully performing his contract after he has entered upon performance may elect either to sue on the quantum meruit or for breach, but he cannot do both.

**2. Damages ⊂⇨124(3)—Expenses incurred and loss of profits recoverable where performance prevented.**

One who has been wrongfully prevented from fully performing his contract may in action for breach of contract recover his actual loss, which would be the expense incurred in performance up to the time of the breach and profits he would have made out of the contract if they be established with sufficient certainty.

**3. Work and labor ⊂⇨22—Petition held one for breach of contract, and not on quantum meruit.**

A petition alleging a written contract by which plaintiff was to drill an oil well and that

defendant breached the contract to plaintiff's damage in the sum of $3,000 is for breach of contract, and not on quantum meruit, despite an amendment asserting that plaintiff, relying on the contract, moved its drilling apparatus on the ground and drilled to a depth of about 400 feet at a cost of $1,200, and defendant received the benefit of the work, which was of the reasonable value of $1,500.

**4. Trial ⊂⇨352(4)—In action on contract, issue held not to submit value of work done.**

In an action for breach of contract to drill an oil well, where the complaint alleged that plaintiff's damage and loss of profit amounted to $3,000, and further alleged that it drilled a well to a depth of 400 feet, etc., a special issue submitting what amount would reasonably compensate plaintiff for the expense of moving its apparatus and drilling the well, in view of the answer, $435, cannot be deemed to have submitted the question of the value of the well, which was about one-fourth drilled.

**5. Continuance ⊂⇨48—Right to continuance from trial amendment question for the court.**

In an action for breach of contract, the question whether defendant was entitled to a continuance on account of an amendment made the morning before trial which amplified the allegations as to damages is, under rule 16 for the district and county courts (142 S. W. xviii), a matter to be adjudged by the trial court.

**6. Continuance ⊂⇨30—Denial of continuance not abuse of discretion.**

Where, on the morning of the trial of an action for breach of contract to drill an oil well, plaintiff made an amendment to the petition by which further allegations of damage were inserted, the denial of a continuance was not an abuse of discretion.

**7. Damages ⊂⇨190—Profits may be recovered in action for breach if the evidence is reasonably certain that plaintiff would have made a profit.**

In an action for breach of contract, profits may be recovered if the evidence warrants the conclusion that it is reasonably certain that plaintiff would have made a profit out of the contract and furnishes data from which reasonable calculation of the profits may be made, and the party who broke his agreement cannot defeat recovery merely because the evidence as to profits is inexact.

**8. Damages ⊂⇨190—Evidence held sufficient to warrant recovery of profits for breach of contract for drilling of an oil well.**

In an action by driller for breach of contract to drill an oil well, evidence *held* sufficiently certain to warrant recovery of profits, showing with certainty the necessary depth of the well, the nature of the land, and the probable profit.

**9. Damages ⊂⇨208(1)—Peremptory instruction should be refused where plaintiff is entitled to any measure of recovery.**

In an action for breach of contract to drill an oil well, where there were other elements of damage on which plaintiff was entitled to go

---

⊂⇨For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to the jury, peremptory instruction should be refused, though plaintiff may not have been entitled to recover profits.

**10. Damages ⊙═62(4)—Where contract to drill well was broken, driller should minimize damages by seeking other employment.**

Just as in case of breach of contract for personal service, a driller in case of breach of contract for the drilling of an oil well should seek to minimize damages by seeking other employment.

**11. Damages ⊙═189—That driller could have obtained other work no ground for reducing damage where the evidence did not show the amount.**

In an action for breach of contract to drill an oil well, the fact that the driller could have secured other work is no ground for reduction of damages, where it was not shown to what extent the damages would have been diminished.

**12. Damages ⊙═62(4)—One who proceeds with performance after notice of repudiation cannot recover.**

Where plaintiff, after notice of defendant's repudiation of its contract for the drilling of an oil well, proceeded with performance, he cannot recover for any expenditures in continuing the work; the contract not being one which could be specifically performed.

**13. Evidence ⊙═522—Experts may give opinion evidence as to the profits from drilling oil well.**

Witnesses who qualify themselves as experts may give opinion evidence as to the profits to be derived from the drilling of an oil well.

**14. Evidence ⊙═555—Expert evidence as to profits from drilling oil well admissible, though based on general conditions.**

Expert opinion evidence as to the probable profits from drilling an oil well is admissible, though based on the general topography of the country and the known depth of underlying rock strata, even though it was possible that oil might have been discovered without drilling to the agreed depth; that fact not rendering the testimony misleading.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Action by the Lee Farm Oil Company against the Osage Oil & Refining Company. From a judgment for plaintiff, defendant appeals. Affirmed on condition plaintiff enter remittitur, otherwise reversed and remanded.

J. E. Whitehead, of Oklahoma City, Okl., and Carrigan, Montgomery, Britain & Morgan and Bert King, all of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellee.

BOYCE, J. This appeal is from a judgment of the trial court awarding the appellee, Lee Farm Oil Company, as plaintiff in the court below, damages against the appellant, Osage Oil & Refining Company, for breach of contract for the drilling of a well by the plaintiff on the premises of the defendant.

As the only assignments which we shall discuss deal with the question of the damages resulting from the violation of this contract by the appellant, we will confine our statement to such facts as will make such discussion intelligible. It appears that the said parties entered into a written contract under the terms of which the Lee Farm Oil Company, a partnership, agreed to drill a well on the property of the Osage Oil Company "to the depth of 2,000 feet, or down to what is known as the 'big lime,' provided the said 'big lime' is found at a less depth than 2,000 feet. Said first parties (Lee Farm Oil Company) agree, however, to stop the drilling of said well at a less depth than 2,000 feet in the event oil or gas is found in paying quantities at a less depth than 2,000 feet, and parties of the second part (the Osage Oil & Refining Company) so desire and request." The Osage Company agreed to furnish the fuel and water necessary to do the drilling and pay therefor the sum of $3 per lineal foot. The plaintiffs alleged that upon the execution of the contract they moved their drilling machinery onto the said premises and drilled said well to about 300 feet, when the "defendant breached the contract in its entirety to plaintiff's damage in the sum of $3,000"; that plaintiff "would have made at least $3,000 had it been permitted to go ahead with said drilling and had the defendant complied with its portion of said contract." These being the allegations of damage, the plaintiffs were permitted on the morning of the trial to insert in their petition the following additional allegation:

"Plaintiff further alleges that the plaintiff, relying on the authority of the parties who made the contract, moved on the premises, and was out above $300 for moving thereon, and drilled to a depth of about 400 feet at a cost of $1,200, and that the defendant received the benefit of the plaintiff's acts and works, which was of the reasonable value of $1,500."

The following are the issues and answers of the jury thereto of damages submitted by the court to the jury:

"Special issue No. 3: Find what would have been the plaintiff's net profit, if any, after deducting all necessary expense of fulfilling said contract. Answer: $1,500.

"Special issue No. 4: Find what amount would reasonably compensate the plaintiff for the necessary expense of moving in to the Watkins farm and drilling the well that he did drill to the depth he did drill on said farm, and claimed to have drilled by reason of the contract introduced in evidence in this case. Answer: $435.

"Special issue No. 5: What did it cost the plaintiff to set up his rig? Answer: $75.

"Special issue No. 6: What did it cost the plaintiff to drill to the depth he did drill? Answer: $200."

The court entered judgment on the verdict of the jury in favor of the plaintiff for the sum of $2,210. The appellee has filed a remittitur in this court of the two items of $200 and $75.

[1-3] We will discuss the first and third assignments together. The first assignment is to the action of the court in overruling a special exception to the petition, as it stood after the making of the insertion as to damages, as stated above, on the ground that two distinct causes of action were thereby alleged, one in quantum meruit and the other for damages, "with no plea in the alternative with regard thereto." The third assignment asserts that the court erred in submitting both such causes of action and entering judgment therefor, on the answer of the jury to the issues submitted. If the petition and the submission of the issues and judgment rendered thereon are to be construed as seeking and awarding recovery on quantum meruit, these assignments would be well taken. It is the law that one who has been wrongfully prevented from fully performing his contract after he has entered upon its performance, and partially performed it, may elect either to sue on a quantum meruit or to sue for a breach of the contract, but cannot do both. If he sues for a breach of the contract, he may recover his actual loss, which would be the expense incurred in the performance of the contract up to the time of its breach, and the profits he would have made out of the contract if they may be established with sufficient certainty. U. S. v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168. The only language of the pleading that might be construed as presenting a claim on quantum meruit is that of the concluding clause of the allegation inserted in the petition on the day of the trial. All other parts of the petition show a claim for expenditures made in and the cost of the performance of the contract and for profits which plaintiff would have made out of the contract. The allegation that the work was of the reasonable value of $1,500 was preceded by a statement which showed that this amount was the cost of the work which the plaintiff had done. We do not think the language referred to should be construed so as to change the character of the cause of action and vitiate that which had been properly pleaded up to this point.

[4] Nor do we think that issue No. 4, as submitted by the court, is to be construed as submitting an issue as to the reasonable value of the work done by the plaintiff; but we think that the court intended, and the jury must have so understood it, to submit merely a question as to the amount of expense incurred by the plaintiff in the performance of the work. Evidence was introduced as to the cost of moving the drilling outfit upon the premises and setting up the rig and drilling the 300 or 400 feet, and the issue was evidently submitted for the purpose of getting the finding of the jury on such matter. The evidence in connection with the finding itself makes it clear that no element of profit was included in this estimate. The well was drilled one-fourth or one-fifth of the depth it was to be put down. The expense of moving and setting up the rig had been incurred, so that the amount found, $435, is so out of proportion to the total consideration which was to be paid for doing the entire work under the contract that it is almost demonstrated that nothing but the actual cost of this work was included in this finding.

[5, 6] The second assignment asserts error in the action of the court in overruling appellant's motion for a continuance, which was presented at the time plaintiff added the allegations to the petition, as above referred to. The appellant here also claims that this addition to the petition set up a new cause of action on quantum meruit, which entitled it to a continuance. As already stated, we do not construe the allegation to have this effect. It merely particularizes one element of plaintiff's damage. Whether this amendment was such as to take the other party by surprise, so as to entitle it to a continuance or postponement, was a matter to be judged by the trial court. Rule 16 for District and County Courts (142 S. W. xviii); I. & G. N. Ry. Co. v. Howell, 101 Tex. 603, 111 S. W. 142. We do not find any abuse of discretion in such matter.

Under the fourth, tenth, and eleventh assignments it is claimed that there was a double recovery allowed, in that the item of $435 found in response to the fourth issue included the items of $75 and $200 found in response to the fifth and sixth issues. The appellee has remitted the said sum of $275, so that it will not be necessary to discuss these assignments.

[7, 8] By the fifth and thirteenth assignments it is contended that there was error in the submission of the issue of profits as an element of recovery, because under the evidence the profits that plaintiffs might make out of the performance of the contract were so uncertain, speculative, and contingent that they are not recoverable. A further statement of the facts is necessary to the decision of these assignments. The evidence shows that the land on which this well was to be drilled was in the triangle formed by the towns of Iowa Park, Burkburnett, and Electra. The plaintiff offered evidence to the effect that hundreds of wells had been drilled in this territory; that the formation ran about the same and had been pretty well developed; that the formation known as the "big lime" was throughout that part of the country found at a depth of about 2,000 feet; that the oil sand in that portion of the

country leading west from Burkburnett, toward Electra, in which territory this well was located, was anywhere from 1,400 to 1,800 feet; that there was a well drilled on this very land to a depth of 1,500 to 1,600 feet, and other wells about 2 or 3 miles away that were also drilled to about this depth. It does appear that there is a field some 8 or 9 miles from this well, though not in the triangle referred to, where an oil-producing sand was found at about 800 feet, and in other parts of the county still shallower sands were found, and the witnesses testified that the oil sands varied more than the "big lime," and that they did not know at what depth a producing oil sand might be found at the place where this well was located. The witnesses also testified that an experienced and competent driller, drilling under ordinary conditions, would make a profit of from $1,500 to $3,000 in drilling a well in this locality to a depth of 2,000 feet, at $3 per foot; that these profits would be practically all made in drilling the first 1,500 feet, and the operator would about break even under such a contract as this in drilling from 1,500 feet on down to 2,000 feet. It is the appellant's contention that the uncertainty as to the depth at which the "big lime" formation or oil or gas in paying quantities might be found in the drilling of this well rendered the amount of profits which plaintiffs might make out of the contract so uncertain as to preclude a recovery thereof in this suit. The rule of law is that profits may be recovered on the breach of contract if the evidence warrants the conclusion that it is reasonably certain that the plaintiff would have made a profit out of the contract, and where the evidence furnishes data from which some reasonable calculation of the amount of such profits may be made, more certainty is required in the proof of the fact that some profits would have been made than as to the amount thereof. As to such matter there is necessarily more or less uncertainty in every case, and the defendant, whose misconduct has produced the situation, is not permitted to escape liability because the damage he has inflicted may not be determined with such exactness as to be free from all uncertainty or contingencies. American Construction Co. v. Caswell, 141 S. W. 1015; Fraser v. Echo Mining & Smelting Co., 9 Tex. Civ. App. 210, 28 S. W. 712; Springer v. Riley, 136 S. W. 579; American Freehold Land & Mortgage Co. v. Brown, 54 Tex. Civ. App. 448, 118 S. W. 1110; Oklahoma Fire Insurance Co. v. Ross, 170 S. W. 1062; Norris Lumber Co. v. Harris, 177 S. W. 517; Grand Prairie Gravel Co. v. Joe B. Wills, 188 S. W. 680; Merchants' Life Insurance Co. v. Griswold, 212 S. W. 812; notes to 53 L. R. A. pp. 40, 41. So far as the "big lime" formation is concerned, the evidence is clear enough that it is reasonably certain that it would not be

reached much under 2,000 feet. The other well that had been drilled on this land and other wells in this territory made it fairly probable that no oil-producing sand would be reached except at a depth of about 1,500 feet. The contract was drawn on the presumption that the well would be probably drilled about 2,000 feet; for the Osage Company, by the terms of the contract, agreed to deposit with the City National Bank of Wichita Falls "the sum of $6,000, the amount necessary to pay for the drilling of said well," etc. There was a possibility that a shallower oil sand might be found in the drilling of this well, though the evidence is such that the jury was warranted in finding that this was a remote probability. The cases we have cited show that in a variety of instances the courts allow damages, although there are possibilities and contingencies that prevent the award from being a certain estimate of the damages. We think the evidence sufficient to warrant the recovery of such damages in this instance.

The seventh, eighth, ninth, fourteenth, fifteenth, and seventeenth assignments are concerning the trial of an issue of the agency of the party executing the drilling contract in behalf of the defendant. Appellant's attorney, on oral argument, admitted that no claim of error can be successfully urged as to these matters because of the fact that there was no sworn denial of agency, as required by the statutes, so that we need not discuss these assignments.

[9-11] The twelfth assignment complains of the refusal of the court to give a peremptory instruction in appellant's favor. The questions presented are disposed of by our rulings on other assignments, except that presented by the fifth proposition, which is as follows:

"There can be no recovery of profits, the difference between cost and contract price in this class of cases unless plaintiff shows that he could not have procured other employment and thus have prevented the damage."

If the proposition be sound, yet the court would not have been warranted in giving defendant a peremptory instruction; for there were other elements of damage on which the plaintiff had the right to go to the jury. This reason alone would require that the assignment be overruled. But we do not think the proposition itself is sound. It is true that, if the plaintiffs could have secured other employment for their machinery and diminished thereby their damages, they would not be entitled to recover such damages as they could thus have avoided. The courts apply a similar rule in such case, as in the case of contracts for personal service. Frazier v. Clark, 88 Ky. 260, 10 S. W. 806, 11 S. W. 83; Joske v. Pleasants, 15 Tex. Civ. App. 433, 39 S. W. 589, § 6; Porter v. Burkett, 65 Tex. 387. But the burden is up-

on the defendant as to such matter. Porter v. Burkett, supra; San Antonio Life Insurance Co. v. Griffith, 185 S. W. 338 (8), and authorities. While the evidence shows that the plaintiffs could have secured other employment for their drilling outfit, it is not shown to what extent the damages would have been diminished thereby, and the jury would have had no basis for a reduction of the damages on this account.

[12] The sixteenth assignment complains of the refusal of the court to instruct the jury that, if they should find that the plaintiffs kept on drilling said well and refused to abandon the same after the defendant had repudiated the contract, then the defendant could not be charged with the costs of drilling said well after such repudiation. The evidence was sufficient to have warranted a finding that the plaintiff had notice of the unequivocal repudiation of the contract by the defendant after the rig was set up and before they began drilling. We think instruction should have been given. A party, while in the performance of a contract, when served with notice of its repudiation by the other party, cannot proceed with the performance of the contract except it be one of which specific performance may be enforced and increase the damages to which he would otherwise be entitled. Tufts v. Lawrence, 77 Tex. 526, 14 S. W. 165; Kingman & Co. v. Western Mfg. Co., 92 Fed. 486, 34 C. C. A. 489, and authorities; 13 C. J. p. 655, § 731; 3 Sutherland (3d Ed.) § 648. The jury found, in answer to the sixth issue, that it cost the plaintiff $200 to drill the well to the depth he did drill it. We suggest that, if the appellee will remit the further sum of $200, this error will not require a reversal of the case.

[13, 14] The eighteenth to twenty-first assignments complain of the admission in evidence of the opinions of various witnesses as to the profits that would be made out of the contract under ordinary conditions. The witnesses showed themselves to be qualified as experts so that this proposition under the assignments is not well taken. The other objections are that the questions and the answers did not take into consideration the contingency that oil or gas might be struck under the 2,000 feet. When the entire evidence of the witnesses is taken into consideration, it appears that their estimates of the profits were based on the contingency that the well would be drilled from 1,500 to 2,000 feet under the ordinary conditions prevailing in that section of the country. We think this character of testimony was admissible, and the jury could not have misunderstood the effect of the testimony of the witnesses, and we find no reversible error presented by these assignments.

In the event appellee files a further remittitur of the sum of $200, as herein suggested, within 15 days from this date, the judgment of the lower court will be affirmed; otherwise it will be reversed, and the cause remanded.