**CARTER v. MYERS et al.**

No. 14187.

Court of Civil Appeals of Texas.
Fort Worth.

March 7, 1941.

Rehearing Denied April 4, 1941.

R. T. Meador, of Dallas, and Judge Gambill, of Denton, for appellant.

Geo. M. Hopkins, of Denton, for appellees.

## McDONALD, Chief Justice.

C. F. Carter, as the owner of an oil lease covering land in Parker County, Texas, entered into a written contract with O. T. Myers, under which the latter was to drill an oil well on the land in question. Pursuant to the contract, Carter placed the sum of $750 in escrow in the Denton County National Bank, of Denton, Texas, to be applied, under the terms of the escrow agreement, to the payment of the sums to become due to Myers under the drilling contract. The drilling contract provided that the well should be drilled to a depth of 1,000 feet, unless oil or gas should be found in paying quantities at a lesser depth. It provided that Myers should be paid one dollar per foot for the depth actually dug, and that Carter would also assign to him leases covering two designated tracts of land containing an aggregate of fifty acres. Although the written contract does not so provide, it appears from the evidence of both parties that they also had agreed that Carter would furnish approximately one hundred feet of ten inch surface casing, and seven hundred feet of eight inch casing. The written contract contained a provision with reference to casing reading as follows: "Party of Second Part (Myers) is to drill said well without further consideration from Party of First Part (Carter) to a depth as above set out unless excess water is encountered making it necessary to set extra string of casing other than the 8″ in such case Party of First Part is to bear expense of furnishing said additional casing in order to carry hole to depth of 1000 feet." The quoted provision of the contract gives rise to the controversy in this case.

Myers began the drilling of the well, and at about 80 or 90 feet encountered a heavy flow of water. The ten inch casing was set at 110 feet to shut off this flow of water. At about 150 feet another flow of water was encountered. The eight inch casing was set at 225 feet to shut off this second flow of water. Myers testified that Carter agreed that the eight inch casing should be set at 225 feet. The next water sand was encountered at 250 feet. Myers continued the drilling down to 325 feet, where, he testified, the water from the last sand was causing the well to cave in so badly that drilling had to be discontinued. At this point Myers called upon Carter to furnish a string of smaller casing, to go inside of the eight inch casing, to shut off the water last encountered. Carter refused to do this, contending that Myers was obligated under the contract to underream from 225 feet to 700 feet, in order that the eight inch casing could be used to a depth of 700 feet, and that if any additional casing were needed below the depth of 700 feet, he would furnish it. From the evidence it appears that the reason for the controversy, as a practical matter, was the fact that the expense to Myers of underreaming, so the eight inch casing could be used, would be about twice as much as the expense of drilling a smaller hole below the point where the eight inch casing had been set. The parties being unable to

agree, Myers discontinued drilling, and moved his equipment off the lease.

Myers brought suit against Carter, and also against the Denton County National Bank, seeking to have the $750 held in escrow applied to the payment of his alleged damages. In answer to six special issues, the jury found: (1) That after the well was drilled to a depth of 325 feet, it became necessary to set casing inside the eight inch casing already in the well; (2) that the necessity of setting casing inside the eight inch casing was occasioned by encountering excess water; (3) that the reasonable cost of completing the drilling of the well from 325 feet to 1000 feet would have been $175; (4) that Myers did not voluntarily abandon the drilling of the well; (5) that after Myers started drilling the well he did not agree that he would underream and reset the eight inch casing if Carter would furnish a shoe; (6) that after the drilling of the well was begun Carter agreed with Myers that if Myers would underream and reset the eight inch casing Carter would furnish the underreamer.

Upon these findings and from the evidence, the court rendered judgment in favor of Myers against Carter for $825, and ordered that the money held in escrow by said bank, less an attorney's fee of $50 allowed to the attorney representing the bank, be applied on the judgment. Carter has appealed from the judgment.

Appellant Carter's assignments and propositions may be divided into four groups. The first group charge that the trial court erred in refusing defendant's respective motions for an instructed verdict, for judgment non obstante veredicto, and for judgment, because "appellant was entitled to judgment as a matter of law under the pleadings and all of the evidence." The second group charge that the answers of the jury to the first and fourth issues were contrary to the undisputed evidence. The third group charge that there was insufficient evidence to support the submission of or the answer to the third issue. The fourth group charge that there is fundamental error on the face of the record in that the plaintiff's petition presented a case seeking rescission of the contract, while the judgment entered was by way of enforcing the contract and awarding damages for its breach.

Appellant, with reference to the provision of the contract calling for a string of casing other than the eight inch casing, contends that the determination of whether the smaller casing was "necessary" was a question involving the construction of the contract, and was therefore for the court, not the jury, to determine. He contends that the use of the word "necessary" suggests that something was meant which could not have been done without, something which was indispensable; and that the proof shows without dispute that the well could have been drilled without any casing smaller than the eight inch if Myers had employed the underreaming process, and that the fact that this process was more expensive did not make the use of the smaller casing "necessary". He refers to the rule that the courts will not relieve parties from their contracts simply because performance may require more expense than was contemplated when the contract was made.

But we must also consider that the parties must have intended that the provision for casing other than the eight inch meant something. They must have contemplated some contingency which would require the smaller casing. If, as appellant contends, the driller could have in any event used the eight inch casing by underreaming, then the provision for the smaller casing would be meaningless. It is our duty to give effect to every provision of the contract if such can reasonably be done. "It is to be presumed that every provision of a contract was incorporated for a purpose. The court has no right to nullify any of its terms, and, if possible, a construction will be adopted which gives effect to each and every part of the instrument, in preference to one which would render any of the provisions therein meaningless." 10 Tex.Jur., page 284. We believe that the use of the expression "extra string of casing other than the 8 inch" suggests that the parties had in mind a smaller casing than the eight inch, rather than, as contended by appellant, more of the eight inch casing. At the time the drilling contract was made, Carter also made a contract with a brother of the driller to rent 80 feet of ten inch casing and 700 feet of eight inch casing, which fact was known to appellee O. T. Myers, and must have been in the minds of the parties in referring to the extra string of casing other than the eight inch. From the evidence, a string of casing would be the entire string of the particular size casing, and not merely a portion of the casing down near the bottom of the

hole. We believe that the submission to the jury of the question of the necessity for the smaller casing was proper, and that there was sufficient evidence to support their finding.

■ Appellant contends that there was no evidence to support the finding of the jury that it would cost $175 to finish the well. Myers estimated that it would cost about $100 if there had been no water. Another witness testified that it would cost about $200 if there had been no water. Appellant argues that since it is undisputed that water was encountered, there is no evidence as to what it would cost with the water in the well. He further argues that there was no evidence of any character to show whether water would likely be encountered at still other levels. We are inclined to believe that the jury could have reasonably inferred that the witnesses were estimating the cost of completion on the basis of the water being properly cased off. The jury also had before them the price per foot set out in the contract, as an indication of what these parties at the outset thought as to the cost of drilling a well in this locality, and the testimony of several witnesses regarding the cost of underreaming, and the comparative cost of underreaming and straight drilling. It appeared from the evidence that several wells had been drilled in this general area. The defendant did not offer any testimony on the cost of completing the well to rebut that offered by the plaintiff, and, in fact, did not cross-examine defendant and his witness on this particular point. In Osage Oil & Refining Co. v. Lee Farm Oil Co., Tex. Civ.App., 230 S.W. 518, writ of error refused, there is an excellent discussion of a state of facts somewhat similar to those in the case here under consideration, and of the rules applicable thereto. While the proof in the present case is not as full as might be desired, we believe it is sufficient to support the verdict. The estimates of the cost of completing the well, like estimates of value of property, are opinions of the witnesses. The jury is given wide latitude in arriving at a verdict based upon opinion evidence. Simmonds v. St. Louis, Brownsille & Mexico Railway Co., 127 Tex. 23, 91 S.W.2d 332, and cases cited in the opinion in that case.

Appellant charges that plaintiff's petition presents a case for cancellation and rescission, while the judgment awards damages for the breach of the contract, by way of enforcing it. The rule of law involved is stated in 17 Corpus Juris Secundum, Contracts, § 440, at page 925:

■ "On the rescission of a building and construction contract, the builder may recover on a quantum meruit the value of the work performed or materials furnished, if used by the employer and of value to him. * * *"

"After a party has rescinded he cannot sue on the contract or for breach of the contract."

In 10 Tex.Jur., page 468, it is said: "In case of the breach of a contract the party not in default may bring an action for damages * * * or he may treat the contract as rescinded and sue for what he has parted with under it."

In the opinion in Osage Oil & Refining Co. v. Lee Farm Oil Co., supra [230 S.W. 520], it is said: "It is the law that one who has been wrongfully prevented from fully performing his contract after he has entered upon its performance, and partially performed it, may elect either to sue on a quantum meruit or to sue for a breach of the contract, but cannot do both. If he sues for a breach of the contract, he may recover his actual loss, which would be the expense incurred in the performance of the contract up to the time of its breach, and the profits he would have made out of the contract if they may be established with sufficient certainty."

■ Appellant's contentions are based upon two sentences in plaintiff's petition. One of them avers that by reason of the facts alleged the contract has become null and void and should be cancelled, annulled and held for naught, and the other, in the prayer, is to the same effect. While these two sentences, taken alone, would indicate that plaintiff's suit is for rescission, yet the remainder of the petition unmistakably reveals that his suit is really for damages on the contract. In its brief appellant concedes that the measure of damages followed in awarding judgment was the correct one if the suit was on the contract, rather than for a rescission of it.

All assignments of error are overruled, and the judgment of the trial court is affirmed.