## THOMASON et al. v. GWINN.
### No. 5644.

Court of Civil Appeals of Texas. Amarillo.
Nov. 27, 1944.

Rehearing Denied Jan. 2, 1945.

Williams & Bell, of Childress, and Sam
J. Hamilton, of Memphis, for appellants.

Mahan & Broughton, of Childress, for
appellee.

HEARE, Justice.

On October 17, 1944, opinion was ren-
dered herein reversing the judgment of the
trial court and remanding the cause for a
new trial. The appellee has presented her
motion for a rehearing. While we adhere
to the disposition originally made of the
appeal, we deem it necessary to withdraw
the opinion heretofore written and substi-
tute in lieu thereof the opinion which fol-
lows.

This action originated in the County
Court of Hall County and was brought by

the appellee, Mrs. F. M. Gwinn, to probate an instrument alleged to be the last will and testament of her daughter, Lillian E. Thomason, deceased. The appellants unsuccessfully contested the application in the county court and judgment was there entered admitting the instrument to probate. An appeal was taken to the District Court of Hall County, where a trial before a jury resulted in the court instructing the jury to return a verdict that the instrument was entitled to probate as the last will of Lillian E. Thomason, and judgment was entered admitting the instrument to probate. The parties will be here designated as in the original proceeding, the appellee being the proponent, and the appellants the contestants.

The proponent offered the instrument for probate as the holographic will of her daughter. The instrument is in pencil writing on a single sheet of ruled pen tablet paper. Under proper order of the court below, the original instrument has been transmitted to this Court and is before us with the record. There are fourteen lines of writing and the wording and punctuation of the instrument and of each line are as follows:

> Mrs F M Gwinn
> has paid $285 00
> on the land estate home
> and Seth Thomason
> has paid $65 00
> exam title 10 00
> putting deeds on
> record and tax 3 00
> and when this is paid
> the place belongs to mama
> in case anything
> happens to me I want mama
> to have half of our intire
> estate, Lillian

It will be noted there is no punctuation in the instrument except the comma which appears in the last line. By way of explanation of the instrument, the wording "land estate home" was shown to be a particular piece of property originally part of an estate belonging to R. D. Land and Ellen C. Land. F. M. Gwinn was the receiver for this Land Estate, and as receiver conveyed this particular piece of property, by instrument dated April 27, 1942, to his daughter, Lillian E. Thomason, the wife of Seth Thomason, for a consideration of $350 cash. It is undisputed that the property was conveyed to Mrs. Thomason to be held by her for her mother, Mrs. F. M. Gwinn,

the true owner. F. M. Gwinn died August 2, 1942. His daughter, Lillian E. Thomason, died October 7, 1942. On February 28, 1920, Lillian E. Thomason and her husband, S. E. Thomason, also known as Seth Thomason, joined each other in the execution of a will, by the terms of which the survivor of the two, as the sole beneficiary, was to receive all of the property, both real and personal, of the one who should first die, and the survivor was named as independent executor or executrix of the will. Following the death of Lillian E. Thomason, her surviving husband, Seth Thomason, offered the instrument of February 28, 1920, for probate as her last will and it was duly admitted to probate in the County Court of Hall County on December 14, 1942, apparently without objection by any party. Seth Thomason died August 31, 1943. On February 11, 1944, the instrument now in question was offered by Mrs. F. M. Gwinn for probate as the holographic will of Lillian E. Thomason. While the instrument is not dated, the circumstances show that it must have been prepared subsequent to the 1920 will. In accounting for the finding of the document, Mrs. Nell Reid and Mrs. Susie Wagner, sisters of Lillian E. Thomason, testified that the personal effects of Lillian E. Thomason had, some time after her death in 1942, been taken from the Thomason home to the home of Mrs. F. M. Gwinn and there placed in a trunk. These effects included a purse which was found in the top drawer of a highboy belonging to Mrs. Thomason and which, witnesses stated, was neither opened nor the contents examined at the time. During the Christmas season of 1943, when the daughters had gathered at their mother's home, it was agreed that Mrs. Thomason's personal effects should be divided among them and, in carrying out this arrangement, the contents of the trunk were examined and the instrument in question was found in the purse which had originally come from Mrs. Thomason's highboy.

The contestants are the heirs of Seth Thomason, deceased, who as has been stated, was the surviving husband of Lillian E. Thomason and the sole beneficiary under her will of February 28, 1920. We shall sometimes refer to the instrument here offered for probate as "the questioned will" but shall not, by the use of such term, be expressing an opinion on the merits of the issue as to whether it is a will.

The contestants resisted the probate of the instrument primarily upon the premises that it is vague, indefinite, and uncertain and is not, in fact, a testamentary instrument entitled to probate and there was not, in fact, any testamentary intention on the part of Lillian E. Thomason at the time she wrote the instrument, if she did; that her previous will is clear, certain, and unambiguous, and that the instrument offered for probate contains no clause of revocation and does not operate as a revocation of the prior will and that the instrument is not wholly in the handwriting of the said Lillian E. Thomason as alleged by the proponent.

The contestants attack the judgment of the court below on the following points: (1) The court should have instructed a verdict for the contestants; (2) the court should not have instructed a verdict for the proponent; (3) the court should have submitted to the jury the issue of testamentary intention; (4) the court should have submitted to the jury the issue of intention on the part of the testatrix to revoke the former will; (5) the court should have submitted to the jury the issue as to whether or not the instrument in question is wholly in the handwriting of Lillian E. Thomason; and (6) the court should not have sustained the proponent's exception to that part of the contestants' pleadings which averred that the instant proceedings constitute a collateral attack on the judgment of the County Court of Hall County admitting the 1920 will to probate.

■ We are of the opinion that the trial court committed error in not submitting to the jury the fact issue as to whether or not the instrument in question is wholly in the handwriting of Lillian E. Thomason. The burden of proof to establish that the questioned will is wholly in the handwriting of the testatrix was upon the proponent. Hogan v. Stoepler, Tex.Civ.App., 82 S.W. 2d 1000. On this point the proponent offered the testimony of her two daughters, Mrs. Nell Reid and Mrs. Susie Wagner, sisters of the deceased, who testified that they were familiar with the handwriting of their sister through having seen her write a number of times and through having corresponded with her and that the questioned will is wholly in her handwriting. Neither of these witnesses attempted to say that she had seen the testatrix write the instrument in question. In fact, they both testified that the first time they ever heard about the instrument or knew it was in existence was when it was discovered in the purse of testatrix at Christmas in 1943, more than a year after her death. There was some cross-examination of these witnesses with reference to the form of the figure "3" in the instrument and about the appearance of the word "intire" in the instrument, but there was no testimony by any witness that the instrument is not wholly in the handwriting of the testatrix. The proponent urges the proposition that the two witnesses by whom the handwriting was identified were not parties to the suit, were not impeached, and were not contradicted and, therefore, the issue was established by uncontradicted testimony and the contestants were not entitled to have it submitted to the jury.

■ The testimony of the two sisters to the effect that the questioned will is wholly in the handwriting of the testatrix is opinion evidence. Neither of them saw her write the instrument. Their identification of her handwriting was necessarily based upon a comparison between the writing in question and writing which they had seen and which they knew to be hers. Joffre v. Mynatt, Tex.Civ.App., 240 S.W. 319.

As a general rule, a jury, in determining facts, is not bound by the opinions of witnesses. Simmonds v. St. Louis B. & M. R. Co., 127 Tex. 23, 91 S.W.2d 332; Guinn v. Coates, Tex.Civ.App., 67 S.W.2d 621; Bridwell v. Bernard, Tex.Civ.App., 159 S.W.2d 981; Carter v. Myers, Tex.Civ.App., 149 S.W.2d 248.

We quote from Simmonds v. St. Louis B. & M. R. Co., supra [127 Tex. 23, 91 S.W.2d 335]: "From the authorities above discussed and quoted, we conclude that juries in weighing opinion testimony and reaching their verdicts, when all or most of the evidence on the particular issue is of such character, may, and, as Justice Field said, must to act intelligently, give effect to the testimony by applying to it, and considering it in the light of, their own general knowledge and experience in the subject of inquiry."

Section 4 of Article 3344, Revised Civil Statutes, 1925, provides that a written will produced in court may be proved: "4. If the will was wholly written by the testator, by two witnesses to his handwriting, which may be made by affidavit taken in open court and subscribed to by the witnesses, or by deposition."

The effect of this statute is that where there is nothing to contradict the testimony of the two witnesses identifying the handwriting as being that of the testator, then the requirement of the law as to quantum of proof necessary to establish that the will was wholly written by the testator has been satisfied. In re Mateer's Estate (Crockett v. Dorman et al.), Tex. Civ.App., 296 S.W. 907, error refused. In the absence of contradictory evidence, therefore, the opinion testimony of the two sisters identifying all of the writing in the questioned will as the handwriting of the testatrix would be sufficient as a matter of law to meet the requirement of the above-quoted statute and, in so far as the question of handwriting is concerned, would be sufficient to justify the admission of the instrument to probate as her will. But this testimony is not made conclusive. The statute does not foreclose contradiction by either oral testimony or physical evidence.

The trial court gave an instructed verdict in favor of the proponent. In doing so, the court must necessarily have determined that there was no evidence in the record of any probative value which would tend to contradict the testimony of the two sisters that the questioned will was wholly in the handwriting of Lillian E. Thomason. In reviewing this finding, the appellate court is in the same position as was the trial court. It must look to the entire record to determine whether there is evidence, written or oral, of sufficient probative force to amount to a contradiction of the opinion expressed by the two sisters.

The questioned instrument was, of course, put in evidence and the original is now before us. It could, in itself, be sufficient to contradict the testimony of the two sisters, even though there be no oral testimony or other evidence tending to discredit their expressed opinions. The trier of the facts has a right to draw conclusions from an examination and consideration of the document itself, as well as from any other testimony or circumstance revealed by the record and bearing upon the issue. It was the trial court's right and duty, and is likewise the province and. duty of this Court, in passing upon the propriety of the giving of an instructed verdict in favor of the proponent, to inspect the instrument and make its own comparisons, one line with another, one word with another, or one letter with another, and to determine if there is any doubt that the same person who wrote part of the instrument also wrote the remainder of the instrument. In case such a doubt exists, then the issue should have been presented to the jury for determination. As stated, it was incumbent upon the proponent to show that all of the testamentary writing was in the handwriting of the testatrix.

We have made a careful examination of the original instrument and have made comparisons between different lines, words, and letters, and we frankly state that we find within the instrument itself sufficient evidence to create a serious doubt in our minds on the issue. It is commonly known that there is a natural variation in one's handwriting. An individual seldom twice writes a word in exactly the same *form*. This is true even of his signature. Indeed, it is recognized that *exact* duplication of the form of one's writing is evidence of simulation. It is equally well known that an individual develops habits in writing, termed "handwriting characteristics," which are duplicated time and again by the writer, but which are quite difficult of duplication by another. Moreover, in genuine writing, there is found evidence of movement and rhythm, whereas simulated writing is more in the nature of a carefully and slowly prepared drawing, and lacks any evidence of freedom of motion or muscular impulse. This lack of free motion in simulated writing is often evidenced, among other things, by line quality, showing an even width of the line on both the upstrokes and the downstrokes, occasioned by an even pressure of the pen or pencil on the paper. In contrast to this, in genuine writing we often find a variation in line widths and usually the up line is narrower than the down line, particularly in the taller letters, such as "h" and "l" and in capital letters. Another handwriting characteristic indicating freedom of motion and rapidity of writing is the presence of "vanishing points," or lines trailing out to a fine point, both at the beginning and at the ending of the words. Absence of any such vanishing points indicates slowness and care in the formation of the writing instead of the unhesitating movement and celerity so often evidenced in the genuine writing of one not enfeebled by age or muscular affliction. Complete absence of such vanishing points is recognized as a distinctive characteristic and when compared with genuine standards that do contain such vanishing points is evidence of copying and of simu-

lation. Osborn, in his eminent work, "Questioned Documents," Second Edition, reviews these revealing characteristics and confirms the generally known and recognized tests of handwriting as above set out.

In examining the original instrument here involved, and before applying any of the foregoing tests, our attention is attracted to two observable conditions, each of which, standing alone, proves nothing with reference to the handwriting itself but, nevertheless, is a circumstance that may assume importance. For convenience in discussion, we shall refer to the words, "I want mama to have half of our intire estate," as the "quoted words," and shall compare these words with the remainder of the instrument, including the signature word "Lillian." It is noticeable that that part of the paper on which the quoted words rest has been rubbed or scuffed. This may or may not indicate an erasure. With the means at hand, we are unable to detect any evidence of other writing having been erased from the paper. There is also evidence of rubbing or scuffing of the paper immediately below the last line of writing, where no writing now appears. As stated, this alone evidences nothing material. As to the second observable condition referred to above, it is apparent to the unaided eye that the writing in the word "estate" on the last line is "grained," whereas this condition does not seem to appear in the signature word "Lillian" on the same line. Under an ordinary reading glass this "grained" condition of the writing appears in all of the quoted words, the "graining" running at a diagonal from top left to bottom right. We are unable to detect any "graining" in any of the words preceding the quoted words and, as stated, none in the signature word "Lillian." If any there be, it is barely visible at all, and is apparently horizontal across the paper. In short, all of the writing, except the quoted words, appears smooth and closely connected in texture, whereas the quoted words appear grained and show noticeable regular skips in the writing line. As stated, this observable condition, standing alone, would not furnish a basis for questioning the genuineness of any part of the writing, but it does indicate that the surface on which the paper was resting at the time the quoted words were written was a different surface from that on which the paper was resting at the time the remainder of the writing, including the signature, was executed. This is a circumstance which the trier of the facts is entitled to consider.

We now make a comparison of the quoted words, "I want mama to have half of our intire estate," with other parts of the writing. It is observed that there are a number of vanishing points at the beginning and ending of words in the first part of the instrument, e.g., in the word "paid" in each of the three instances, and in the words "estate" and "title." Others could be mentioned. We find no such handwriting characteristic in the quoted words. It is likewise observed that the width of the up and down lines on the staff of "h" in the words "have half" is uniform and contrasts with the narrow up line and wider down line in the staff of the "h" in the words "home," "has," "the," "happens," and "anything." Another noticeable difference in characteristics is in the letter "a" in the quoted words as compared with that letter in the other words, including the signature. The connecting line leading up to the letter "a" in the words "have half" and "estate" on the last two lines of the writing never enters the letter, whereas in practically all of the times this letter appears in the remainder of the writing, including the signature, when it is joined to a preceding letter, the connecting line loops into the body of the letter "a." Also, the line leading away from the letter "a" assumes a different characteristic in the quoted words from that in the remainder of the writing. Likewise, a careful comparison of the word "estate" which appears on the third line with the same word which appears on the last line, to our minds, reveals characteristic differences sufficient that reasonable minds could differ on the issue of whether the same person wrote both of them.

It is difficult, in the absence of a photographic reproduction of the instrument in this opinion, to exemplify these noticeable characteristic differences. It would serve no useful purpose to go more into detail with further comparisons. Suffice it to say that we are of the opinion there is sufficient evidence furnished by the instrument itself to tend to contradict the opinions expressed by the two sisters that the questioned instrument was wholly written by their deceased sister, Lillian E. Thomason. It follows, therefore, that, in our opinion, the issue should have been submitted to a jury for its determination.

■ The next question for consideration is whether there should have been submitted to the jury the issue of an intention on the part of the testatrix to revoke her former will. The record reveals that all of the property which the testatrix owned at her death was community property belonging to herself and her husband, who was the sole beneficiary in her will executed in 1920. The necessary result of the questioned will, if genuine, would be the revocation of the former will, because in the former instrument. all her property was left to her husband and in the questioned will, if she was referring to her own estate, it was all left to her mother. Therefore, if the instrument was otherwise established to be a holographic will, it was not necessary for a jury to determine that it was the intent of the testatrix to revoke her former will, because such intention would be inferred from the instrument itself inasmuch as it could have no other effect. See 51 A.L.R. 657, paragraph b.

■ This brings us to the issue of the intention of the testatrix for the questioned instrument to constitute a will. Ordinarily, testamentary intent may be inferred from the language employed and is not a jury question. The words, "in case anything happens to me," in the instrument may reasonably be construed to mean "in the event of my death" or "at my death." It is common knowledge that many people are timid about speaking directly concerning their own possible death and seek to soften the bluntness of such expression by use of the term, "in case anything happens to me," or words of like import. In re Tinsley's Will, 187 Iowa 23, 174 N.W. 4, 11 A.L.R. 826.

■■ If it is established, therefore, that the testatrix intended to say, "in case anything happens to me I want mama to have half of our intire estate," then there would be no jury question of testamentary intent. The intent would be inferred from the language itself. It is to be noted, however, that there is no punctuation which would aid in revealing the intention of the testatrix with reference to the words, "in case anything happens to me." Those words could be employed as a clause modifying the words which precede them and speak only of the Land Estate home, or they could be similarly employed with the words that follow them. Mrs. Thomason held legal title to the "land estate home" but apparently sought to leave written evidence that she was not the true owner and that her mother was the true owner of this property, subject to the claim of Seth Thomason against the same for the amounts he had expended as detailed by the instrument. The words, "in case anything happens to me," might reasonably be used in connection with her effort to leave such written evidence of the true ownership of this property. It follows, therefore; that unless testamentary intent must necessarily be inferred from the words, "I want mama to have half of our intire estate," then the existence of such an intent must be established as a fact by a jury finding. If the writing is vague or ambiguous or there are circumstances from which reasonable minds might form different conclusions concerning the existence of testamentary intent, then the issue should be submitted to the jury for them to determine from the document itself and from the surrounding circumstances whether the testatrix intended to make by such document a revocable disposition of her property to take effect at her death. We are of the opinion that Special Charge No. 4, requested by the contestants and embodying the issue of testamentary intention, should have been submitted to the jury. Commercial Standard Ins. Co. v. Davis, 134 Tex. 487, 137 S.W.2d 1; Shiels v. Shiels, Tex.Civ.App., 109 S.W. 2d 1112; Home Benefit Ass'n v. Briggs, Tex.Civ.App., 61 S.W.2d 867.

■ The contestants assert that the instant proceeding, seeking to probate the questioned will, constitutes a collateral attack on the judgment of the County Court of Hall County admitting to probate as the last will of Lillian E. Thomason her will dated February 28, 1920, and complain of the action of the trial court in sustaining the proponent's exceptions to their pleadings to that effect. The point will be overruled. The Supreme Court, in the case of Vance v. Upson, 64 Tex. 266, held, in effect, that on appeal in a probate proceeding the district court could do whatever the county court could have done in the case, and the fact that the county court had formerly admitted to probate, as the will of the same testator, another paper executed as a will prior in point of time to the last, interposes no obstacle to the probate of any paper or papers which may be, in fact and in law, the last will of the testator. The Supreme Court pointed out that the district court could, even without pleadings to support it, in the judgment admitting the later instrument to probate set aside the previous order

by which the former instrument had been admitted to probate.

What we have said disposes of all the issues presented by appellants. Since we are of the opinion that fact issues existed which should have been submitted to the jury, we adhere to our former order that the judgment of the trial court be reversed and the cause be remanded for a new trial, and now overrule the appellee's motion for a rehearing.