**BRIDWELL v. BERNARD.**

No. 14331.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 6, 1942.

Rehearing Denied March 13, 1942.

982

T. R. Boone and Kearby Peery, both of Wichita Falls, for appellant.

Napier & Napier, of Wichita Falls, for appellee.

SPEER, Justice.

Plaintiff John P. Bernard sued and recovered judgment against defendant J. S. Bridwell for injuries sustained on account of alleged negligent conduct of Bridwell's agents and employees while in the course of their employment. The parties will carry the same designation here as in the trial court.

Several acts of defendant's agents are pleaded as negligence proximately causing the injuries complained of. Defendant answered by plea in abatement, and subject to that plea, by general denial, pleas of contributory negligence and assumed risk.

The plea in abatement was based upon allegations of an election by plaintiff, wherein he was charged with having previously filed a claim with the Industrial Accident Board against plaintiff's insurance carrier for compensation under the Workmen's Compensation Act, Vernon's Ann. Civ.St. art. 8306 et seq.; that relief was denied by the Board, from which order he appealed to the district court and prosecuted said claim, but during the trial dismissed his case. That subsequently plaintiff prosecuted this suit as a common law action.

Trial was had in this case to a jury upon special issues. The verdict was favorable to plaintiff, in all respects. Judgment was entered and defendant has appealed.

It appears from the record that plaintiff, for a number of years prior to the time involved, had been conducting a general welding business in the City of Wichita Falls. Defendant was operating an oil lease in Clay County. On that lease was a battery of perhaps a half dozen storage tanks, and eight or ten feet away from the nearest oil tank there was what is called a "gun-barrel" tank. The purpose and functions of the gun-barrel tank is not clear to us, but obviously it was useful and necessary. Between the oil tanks and the gun-barrel tank there were connecting pipes of various kinds and sizes, as disclosed by photographs in the record. One of these pipes extended from near the top of the oil tanks to a point over the gun-barrel tank and was elbowed down and extended into the gun-barrel tank. New oil will emit gas and the oil tanks had relief valves to permit it to escape. There was a valve where the gun-barrel or large pipe came out of the oil tanks which could be closed or opened at will. Defendant desired to have certain changes made in the manner in which the

pipes were connected up between the oil tanks and the gun-barrel tank.

Defendant's manager went to Wichita Falls and engaged plaintiff to go out to the lease and make the changes desired. Plaintiff was told that he would be shown by the foreman on the lease what was to be done. Plaintiff took his two trucks of equipment and a helper and went to the lease, ascertained what was wanted, inspected the interior of the gun-barrel tank where a part of the work was to be done, found it clean and free of gas and began cutting the gun-barrel pipe with an acetylene torch. That and other pipes were to be cut, bent, welded and replaced, creating a slightly different set-up of connections. After the first cutting, and while plaintiff was engaged in some other part of the work, defendant's employees connected up the pipe which extended from the oil tanks to the gun-barrel tank and gas flowed through and accumulated in the gun-barrel tank. Plaintiff did not know the connection had been made and when he returned to weld the gun-barrel which had previously been cut by him, his acetylene torch ignited the gas in the tank; an explosion followed, resulting in painful, if not serious, injuries to him. The foregoing summary of events has been taken largely from the jury verdict.

█ █ The first point raised is that the court should have sustained defendant's plea in abatement. It may be inferred from the brief and arguments that defendant contends plaintiff was an employee of defendant, coming under the provisions of the Workmen's Compensation Act, and therefore was relegated to his rights thereunder, and could not maintain a common law action, such as this. The contention is based largely upon language used in plaintiff's allegations. In the petition is found this expression: " * * * that on or about said date the defendant J. S. Bridwell *employed* (emphasis ours) the plaintiff for the purpose of making some pipe connections to a tank * * *." It is argued that if plaintiff was "employed" by defendant he was of necessity an employee. That defendant carried compensation insurance and plaintiff was required, under the law, to rely upon that insurance, in the absence of having complied with certain provisions of Article 8309, R.C.S., Vernon's Ann.Civ.St. art. 8309. Following the quoted part of the petition, which could properly be treated as a conclusion of the pleader, there are elaborate allegations of facts, all of which were supported by evidence, disclosing that plaintiff was an independent contractor. Even though plaintiff did allege that he was "employed" by defendant to do certain work, we think the language used would not of itself constitute an allegation of the relationship of master and servant. The very text of Article 8309, after defining who are employees entitled to claim compensation under the Act, specifically excepts from its provisions independent contractors. It matters not how independent contractors are "employed", "hired" or otherwise induced to work for another, they have no protection under the Workmen's Compensation Act.

█ █ It seems to be the settled law in this state that when services are rendered in the course of an independent occupation and the will of the employer is represented only as to the result of the work to be performed, and not as to the means by which it is carried out or the details in its performance, the person rendering the service is an independent contractor. 23 Tex.Jur. p. 542, § 3. The testimony shows that when plaintiff arrived on the lease, defendant's man in charge pointed out the work to be done, and plaintiff, with his own equipment and helper, set about to do it, employing their own means as to the details of how they would get the job done. No instructed verdict should have been given upon the grounds presented.

█ The second point relied upon is that plaintiff elected to pursue a remedy whereby he sought recovery in another suit, under the Workmen's Compensation Act, and for that reason was precluded from recovery in this suit for a common law liability. If we are correct in holding that plaintiff was an independent contractor under the law and the undisputed facts appertaining to the whole transaction, then he had no cause of action under the Workmen's Compensation Act. Because he at one time misjudged his real remedy would not preclude him from later pursuing a proper one. As we view the case he never at any time had more than one remedy to recompense him for the alleged wrongs. The doctrine of election of remedies does not apply unless the party has more than one valid and available remedy when he makes his election. Poe v. Continental Oil & Cotton Co., Tex.Com.

App., 231 S.W. 717. Plural available remedies are said to be co-existing remedies; when a party chooses to pursue one of such remedies, he waives all others. 15 Tex.Jur. p. 820, § 2. The contention that plaintiff was cut off from recovery because of an election of remedies cannot be sustained.

■ ■ By his third point defendant contends that he was entitled to an instructed verdict because, as he argues, the undisputed testimony shows that plaintiff knew all the dangers incident to the work being done by him and therefore as a matter of law assumed the risks incident thereto. There is no merit in the contention, for the reason the doctrine of assumed risk only applies in cases of master and servant. That relationship does not exist between an employer and an independent contractor. West Texas Utilities Co. v. Renner, Tex.Com.App., 53 S.W. 2d 451. In the cited case it is held that even a servant does not assume such risks as are created by the negligence of the master. This suit is predicated upon the alleged negligence of defendant. The evidence shows conclusively that oil in the storage tanks emits gas and that before plaintiff began work on the gun-barrel tank, gas from the storage tanks had been cut off, but during the time plaintiff was working, defendant's employees connected the pipes between the tanks, without the knowledge of plaintiff, and gas went into the gun-barrel tank, and while plaintiff was working there with his acetylene torch the explosion occurred. The jury verdict convicted defendant of negligence in these respects, proximately causing the injuries, and acquitted plaintiff of contributory negligence in connection therewith. Then, too, under a proper definition of assumed risk, the jury found that plaintiff did not assume the risk. There is ample testimony to support the jury verdict.

■ We are unable to agree with defendant's fourth contention. It is to the effect that the court erred in not instructing the jury as to new and independent cause, and in not taking cognizance of new and independent cause in his definition of proximate cause. Defendant pleaded that there was free gas in the air all about the premises where plaintiff did the work he was employed to do; that this free gas was attracted by the heat of plaintiff's acetylene torch and caused to gather in the gun-barrel tank where the explosion occurred. It is obvious from the testimony that a certain amount of gas accumulated in the storage tanks and that through valves it escaped into the air above the tanks, but there is nothing to show that the free gas so escaping would go up into the air or went down toward the ground where plaintiff worked on the gun-barrel tank eight or ten feet away. We fail to find in the record any testimony whatever that the heat of the acetylene torch tended to attract any free gas that may have been in the air to gather in the gun-barrel tank where plaintiff was working. The testimony is conflicting as to whether or not plaintiff knew of the presence of any amount of gas in the air. The jury answered that he did not know it; the jury likewise found that plaintiff could not have known of the presence of gas in the air by the exercise of ordinary care, and that his use of the torch at that time and place was not negligence. If it could be said, with the amount of testimony given as to there being free gas in the air, that the issue of new and independent cause was raised; and error was committed by failure to submit it to the jury, it became harmless since the court did submit issues upon every phase of the case, where there was testimony offered, that defendant now claims raised the issue of new and independent cause. The jury answered the issues against defendant's contention. Magnolia Petroleum Co. v. Owen, Tex. Civ.App., 101 S.W.2d 354, page 359, writ dismissed.

■ We find some difficulty in disposing of defendant's fifth point, in a manner that will be understandable from this opinion. In the record, we find defendant submitted fifty requested special issues in bloc, but the court noted thereon that they were "requested collectively and separately". It is obvious to us that the court's charge was revised after the requested issues were presented to him; for we find that he included some of them in his charge. The point presented complains because the court did not submit to the jury 12 of the special issues requested by defendant. It is claimed to be germane to assignments of error 11 to 33. It is contended by defendant that he was deprived of the privilege of having the jury pass upon defensive matters relied upon by him. As we view the several requested issues which were not submitted, many of them were only evi-

dentiary in their nature, and had no proper place in the charge; others were submitted by the court, not in the identical language requested, but were such as to elicit findings of fact determinative of the points inquired about. The brief on the point presented contains no statement, nor does it refer to the statement of facts pointing out any testimony as a basis for the submission of any one or more of the requested issues, refused by the court. The point and the 22 assignments of error to which it relates must be overruled.

■ The sixth and last point challenges the authority of the trial court to enter judgment for plaintiff for $1,605 when the verdict of the jury awarded him only $1,500. There is merit in this contention. In his pleadings, plaintiff sought recovery for his injuries and for doctor's and medical bills. The doctor who attended plaintiff testified that the services were necessary and reasonably worth $105. There was no other evidence on the item. No issue was submitted to the jury whereby it could consider the question. The burden was on plaintiff to have the amount determined as a fact by the jury. The evidence being wholly expert or opinion testimony of the physician did not establish it as an undisputed fact. In Guinn. v. Coates, Tex.Civ.App., 67 S.W.2d 621, 623, the court, speaking through Chief Justice Hickman, on this point said: "It is peculiarly within the province of the jury to weigh opinion evidence, and the judgment of experts, even when unanimous and without positive contradiction, will not necessarily be conclusive." To the same effect is the holding by the Supreme Court in Simmonds v. St. L., B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332.

■ ■ The error of the trial court in adding to the judgment $105 more than the amount found by the verdict of the jury may be corrected by us. We clearly have jurisdiction of the appeal and the amount is specific and definite. Appellate courts are clothed with power to render such judgments as the trial court should have rendered, and in doing so may modify the judgment rendered so as to make it conform to the one that should have been rendered. 3 Tex.Jur. p. 1161, § 817. We do not construe the situation here as one where an excessive amount has been allowed and appellee should have the option of determining whether he would enter a suggested remittitur or suffer a reversal of the judgment as provided by Article 1862, R.C.S., and Rule 440 of the now effective Rules of Practice and Procedure.

By the provisions of Article 2211, R.C.S., a judgment must conform to the pleadings and verdict, if a jury trial is had. The verdict was for $1,500. The judgment is for $105 in excess of the verdict. Under the explanations and instructions given by the court in connection with the issue inquiring about the amount plaintiff could recover, doctor's and medical bills were not mentioned and those items were, of necessity, not included in the answer to the issue. They could not properly be included in the judgment. There being no other reversible error in the record, the judgment of the trial court will be reformed by us so as to be for $1,500 and, as reformed, is affirmed.

■ In view of the fact that appellant has obtained certain relief by prosecuting this appeal, and considering the relation of the amount deducted from the judgment to the amount permitted by us to stand, under the discretion given us by Rule 448, Rules of Practice and Procedure, $25 of the costs of this appeal will be taxed against plaintiff (appellee) and the remainder against appellant.

It is accordingly so ordered.