Ted W. WENK, Appellant,

v.

CITY NATIONAL BANK, Appellee.

No. 1402.

Court of Civil Appeals of Texas,
Tyler.

Feb. 26, 1981.

Christoper M. Maisel, Austin, for appellant.

Thomas H. Watkins, H. Kirk Hays, Hilgers, Watkins & Hays, Austin, for appellee.

SUMMERS, Chief Justice.

This is a bank credit card case. Plaintiff, City National Bank (appellee or Bank), sued defendant, Ted E. Wenk (appellant or Wenk), for his alleged non-payment of charges on Master Charge and Visa credit cards issued to him.

Although the Bank's petition was in the format of a sworn account, it included a claim for debt, allegedly past due, in the amount of $1,931.02, interest, reasonable attorney's fees in the amount of $650.00, and costs of court. Plaintiff Bank proceeded to trial for recovery on its claim for such debt which it contends was created by the money which the Bank advanced as loans on behalf of Mr. Wenk to pay the charges incurred by him in his use of such credit cards. Defendant Wenk answered with a sworn denial in the following form:

> That the entire claim as alleged in Plaintiffs [sic] Orginal [sic] Petition and exhibits thereto and which claim is the foundation of Plaitiff's [sic] action is wholly not just or true and further that the attorney's fees prayed for in the amount of $650.00 is [sic] unreasonable.

Wenk's sworn denial does not effectively trace the language of Rule 185;[1] its statement that the claim is "wholly not just or true" is nothing more, in effect than a sworn general denial. *Solar v. Petersson*, 481 S.W.2d 212, 215 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ).

In answer to the Bank's request for admissions, Wenk admitted that the Bank issued the Master Charge and Visa cards to him and he retained and used them.

Trial was to the court, which rendered judgment for plaintiff Bank in the total sum of $2,741.88, which includes plaintiff's principal claim of $1,931.02, interest to date of $160.86, and attorney's fees of $650.00. From this adverse judgment, defendant Wenk has appealed.

As reformed, affirmed.

---

1. All references to rules are to Texas Rules of Civil Procedure.

■ The record before us is without findings of fact or conclusions of law. Under these circumstances, the well-settled rule is that the appellate court is required to affirm the judgment rendered by the trial court if it can be sustained on any reasonable theory authorized by law and supported by the evidence. *Bishop v. Bishop*, 359 S.W.2d 869, 871 (Tex.1962); *Sanders v. Republic National Bank of Dallas*, 389 S.W.2d 551, 554 (Tex.Civ.App.—Tyler 1965, no writ).

■ Defendant Wenk predicates his appeal on five points of error, several of which are clearly multifarious. A point of error is multifarious if it embraces more than one specific ground of error, or if it attacks several distinct and separate rulings of the trial court. *Rio Delta Land Co. v. Johnson*, 566 S.W.2d 710, 713 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Kroger v. Cellan*, 560 S.W.2d 505, 507–508 (Tex.Civ. App.—Tyler 1977, writ ref'd n.r.e.); *City of Houston v. Jean*, 517 S.W.2d 596, 598 (Tex. Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.); 5 Tex.Jur.3d *Appellate Review* § 473 (1980). In disposing of these points, we apply the liberal rule with respect to the construction of points laid down in *Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478, 482 (1943) and reaffirmed by the Supreme Court in *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 114 (Tex.1976). The rule so established, simply stated, is that if a point is sufficient to direct the court's attention to the matter complained of, the court will "look to the 'point' and the statement and argument thereunder to determine the question of reversible error." *Eoff v. Muskiet*, 561 S.W.2d 542, 544 (Tex.Civ.App. —Beaumont 1977, writ ref'd n.r.e.); *Nueces County Drainage & Con. Dist. No. 2 v. Bevly*, 519 S.W.2d 938, 941 (Tex.Civ.App.— Corpus Christi 1975, writ ref'd n.r.e.).

■ In his first point of error, Wenk asserts that the trial court erred in overruling defendant's objection to the admissibility of Plaintiff's Exhibit 1 because:

(A) The evidence was clearly hearsay and no proper predicate was laid for admission of a record by an affidavit pursuant to Article 3737e, § 5.[2]

(B) The affidavit purporting to lay the business record exception or any other exception to the hearsay rule was insufficient to overcome the objection to hearsay.

We disagree.

Plaintiff proffered and over defendant's hearsay objection the trial court admitted Plaintiff's Exhibit 1. It consisted of the following four items: an affidavit tracking the language of Article 3737e; a Master Charge statement reflecting a balance past due of $875.38; a Visa statement reflecting a balance past due of $1,037.27; and the credit agreement for the Visa and Master Charge cards. Plaintiff asserted admissibility under Article 3737e § 5, which reads as follows:

Any record or set of records or photographically reproduced copies of such records, which would be admissible pursuant to the provisions of Sections 1 through 4 shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Sections 1 through 4 above, that such records attached to such affidavit were in fact so kept as required by Sections 1 through 4 above, provided further, that such record or records along with such affidavit are filed with the clerk of the court for inclusion with the papers in the cause in which the record or records are sought to be used as evidence at least fourteen (14) days prior to the day upon which trial of said cause commences, and provided the other parties to said cause are given prompt notice by the party filing same of the filing of such record or records and affidavit, which notice shall identify the name and employer, if any, of the person making the affidavit and such records shall be made available to the counsel for other parties to the action or litigation for inspection and copying. The expense for copying

---

**2.** This and all other statutory references are to Vernon's Annotated Texas Civil Statutes.

shall be borne by the party, parties or persons who desire copies and not by the party or parties who files the records and serves notice of said filing, in compliance with this Act. Notice shall be deemed to have been promptly given if it is served in the manner contemplated by Rule 21a, Texas Rules of Civil Procedure, fourteen (14) days prior to commencement of trial in said cause.

The statute provides that notice shall be deemed to have been given if it is served in the manner contemplated by Rule 21a fourteen days prior to commencement of trial in said cause. Rule 21a specifically provides for service "by the proper sheriff, or constable" and that "the return of the officer ... shall be prima facie evidence of the fact of service."

On January 22, 1979, plaintiff Bank filed its original petition including therewith Plaintiff's Exhibit 1 (the records sought to be introduced) with the clerk of the court for inclusion with the papers in the cause. This date was more than fourteen (14) days prior to the date trial of the cause commenced on September 18, 1979. Defendant Wenk, having been served with a copy of plaintiff's original petition including Plaintiff's Exhibit 1 on January 25, 1979, as evidenced by the officer's return of citation, was given prompt notice as contemplated by the statute. Such notice identified the name and employer of the person making the affidavit as Jim Greenwood, an Assistant Vice President of City National Bank.

Furthermore, Mr. Greenwood as Assistant Vice President of plaintiff Bank was a qualified witness within the meaning and intent of Article 3737e. *University Savings & Loan Assn. v. Security Lumber Co.*, 423 S.W.2d 287, 290 (Tex.1967); *Rippetoe v. White Rock National Bank*, 555 S.W.2d 934, 936 (Tex.Civ.App.—Waco 1977, no writ). His affidavit set forth specifically that the records attached thereto were in fact so kept as required by Article 3737e for the admissibility of business records. In its pertinent part, Mr. Greenwood stated upon oath in his affidavit that "such documents were made in the regular course of busi-

ness, that it was the regular course of business for an employee or representative of the business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record, and that it was made at or near the time of the act, event or condition or reasonably soon thereafter." It was incumbent upon plaintiff to prove to the trier of fact that all requirements of Article 3737e had been satisfied by a preponderance of the evidence. The trial court, in admitting the business records, implicitly held that the affidavit provided satisfactory proof of each required element. Any question regarding the affiant's personal knowledge as to the various items or contents of such records may be shown to affect the weight and credibility of the record but not its admissibility. Article 3737e, § 2. Defendant's first point of error is overruled.

In his second point of error, defendant Wenk contends that the trial court erred in denying defendant's motion for a directed verdict.

■ The statement of facts reveals that after the plaintiff rested its case the defendant moved for a directed verdict. When the trial court stated that he overruled the defendant's motion for a directed verdict, defendant then proceeded to put on his evidence. When both sides rested their cases, the defendant did not reurge his motion for a directed verdict. Under that set of facts the defendant waived his motion for an instructed verdict.

The law is well settled that a defendant by electing not to stand on his motion for an instructed verdict made after the plaintiff had introduced its evidence and rested its case, and by proceeding with the introduction of his own evidence, waives his motion for instructed verdict unless the motion is reurged at the close of his case. *Texas Steel Company v. Douglas*, 533 S.W.2d 111, 113–14 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); *Barrett v. Curtis*, 407 S.W.2d 359, 363 (Tex.Civ.App.—Dallas 1966, no writ); 56 Tex.Jur.2d *Trial* § 205.

In his third point of error, defendant asserts that the trial court erred in overruling defendant's objections to the admissibility of Plaintiff's Exhibits 2 and 3 on the grounds that (1) such exhibits are hearsay and no proper predicate was laid showing an exception, and (2) such exhibits violate the best evidence rule as they were incomplete copies of something. We disagree.

After plaintiff had rested and defendant's motion for a directed verdict had been denied, defendant called Kenneth Decker, an officer of the Bank as a witness. Upon cross-examination by plaintiff, Plaintiff's Exhibits 2 and 3 were admitted into evidence over the hearsay and best evidence objections of the defendant set forth above. Plaintiff's Exhibits 2 and 3 were identified by Mr. Decker as xerox copies of original applications (in microfilm form) in the Bank's records. He testified that such applications bear the signature of the Ted Wenk who filed the applications upon which the Master Charge and Visa credit cards in this lawsuit were issued.

■ We are of the opinion that Plaintiff's Exhibits 2 and 3 were admissible as admissions of a party. It is well settled that any statement or conduct of a party which is inconsistent with the position taken by him at the trial may be given in evidence against him. 1A, Ray, Texas Law of Evidence § 1121 (Texas Practice 3d ed. 1980). Such statements and acts are extrajudicial admissions or quasi-admissions. They are admissible against, but they are not conclusive on, the admitter or actor; the statements and acts merely form a part of the evidence and their weight and probative force are matters for the trier of the facts. *Esteve Cotton Co. v. Hancock*, 539 S.W.2d 145, 157 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). Ray, *supra* at §§ 1127–29.

■ Additionally, the record reveals that statements reflecting the current status of defendant Wenk's Master Charge and Visa card accounts were mailed to him monthly by plaintiff Bank. Mr. Decker testified that the Bank kept, in the ordinary course of its business, records concerning the collection of such Master Charge and Visa accounts; that any protestation of an account made by a cardholder to the Bank or one of its collection agents would be noted in the business records of the cardholder's account; that having examined Mr. Wenk's file, he has personal knowledge that there is nothing in the record to indicate that Mr. Wenk ever said to anybody at plaintiff Bank "this is not my card" or "any of these charges are not my charges." In such an instance, Wenk's silence constitutes a tacit admission of the correctness of the accounts. Ray, *supra* at § 1153.

■ Defendant agrees that copies of otherwise admissible evidence are acceptable but contends that Plaintiff's Exhibits 2 and 3 (with the words "do not detach" printed in the margin) are incomplete copies and therefore violate the best evidence rule. We do not agree. Whether something was supposed to be attached to the exhibits is not relevant to the actual exhibits that were introduced. The exhibits can stand for nothing more than what they are. Simply because there may have been another part which was detached from the exhibits before their introduction and admission does not render the exhibits themselves inadmissible. Furthermore, it has been held that the best evidence rule does not apply where writing is sought to be used as an admission. *Rhineland Union Gin v. Volunteer State Life Ins. Co.*, 113 S.W.2d 925, 926 (Tex.Civ.App.—Eastland 1938, writ dism'd).

Appellant's third point is overruled.

By his fourth point of error, defendant asserts that the trial court erred in denying his motion to strike Plaintiff's Exhibit No. 1 because such exhibit was shown to be a computer record and hearsay and no exception to the hearsay rule was shown. Defendant's motion was as follows:

Your Honor, at this time before I proceed any further, I would now move to strike Plaintiff's No. 1 showing that it is clearly hearsay on its face because it's a computer record. It's a computer record, and the computer records, the law is that not only do you have to prove up that it

was a business record, you have to prove that the computer was generally accepted and the person testifying had knowledge of the work of the computer or that it was accurate and generally accepted as true and accurate, and there is absolutely no testimony to that. Therefore, now we have to strike Plaintiff's No. 1.

Defendant contends in his brief that when computer records are offered, in addition to the elements set out in the business records exception, there must be a showing that (1) the particular computing equipment is recognized as standard equipment and (2) that the records were prepared by persons who understood the operation of the equipment and whose regular duty was to operate it.

In his brief, defendant Wenk cites *Railroad Commission v. Southern Pacific Company*, 468 S.W.2d 125, 129 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.), in which the above requirements were enunciated by the Austin Court of Civil Appeals. However, in refusing writ of error with the notation "no reversible error," the Supreme Court in a per curiam opinion, 471 S.W.2d 39 (Tex. 1971), expressly stated it was not passing on the holding of the Court of Civil Appeals as to the admissibility of the electronically kept business records.

The legislature has set forth the requirements for admissibility of business records in Article 3737e. Those requirements are:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record; and

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

The legislature did not see any necessity for additional requirements where the records sought to be introduced into evidence were electronically produced. These requirements have remained the same even though Article 3737e was amended by the 61st Legislature in 1969 and the 63rd Legislature in 1973. Once the requirements as above set out are met the records are admissible and are to be given whatever weight they are entitled to. *Voss v. Southwestern Bell Telephone Company*, 610 S.W.2d 537 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n. r. e.).

■ The trial court properly admitted Plaintiff's Exhibit 1 as a memorandum within the business records exception to the hearsay rule. The exhibit is evidence that plaintiff Bank advanced money on behalf of defendant, Ted E. Wenk, thereby entitling plaintiff to repayment. Plaintiff's recovery is not predicated upon any alleged transactions of Wenk occurring with any store or business (Woolco, for example), but upon defendant Wenk's failure to repay sums plaintiff Bank advanced for Wenk's benefit. Plaintiff's Exhibit 1 is a memorandum of the only material and relevant transaction upon which recovery is based—evidence of plaintiff lending money to defendant. Lending money, therefore is the "act" contemplated by Article 3737e. The memorandum of the act is an internal bookkeeping entry which, under the evidence adduced, was made reasonably soon after the transaction by the Bank's employee or representative within the ordinary course of the Bank's business.

The evidence reveals that the exhibit was not prepared for purposes of litigation; that plaintiff Bank used it in confirming that the Bank advanced money to Wenk, in determining how much Wenk owes the Bank, in determining the amount of current purchases by the defendant and the previous balance which defendant did not pay. Plaintiff Bank, therefore, clearly used the exhibits as its business record, and in so doing, *relied* upon it—and not just for proving its case against this defendant, but in its day-to-day business activities.

In support of the trial court's action in admitting Plaintiff's Exhibit 1, there is the affidavit of Jim Greenwood, an Assistant

Vice President of plaintiff Bank attached to said exhibit verifying under oath that the records in the exhibit were made in compliance with the three requirements of Article 3737e for the admissibility of business records, Mr. Greenwood being a qualified person under the statute to make such affidavit.

Also in support of the trial court's action is the testimony of Kenneth Decker, Credit and Collection Manager, credit card section of plaintiff bank, who testified as follows: that the statements contained in Plaintiff's Exhibit 1 are computer printouts generated by the Bank's accounting department in Dallas, SSBA; that SSBA, Southwest State BanCard Association, is hired and paid by the banks that are members of the association to electronically print out such statements; that he has personal knowledge of, and indirect supervisory control over, the people who actually do the keypunching which results in the printouts such as Plaintiff's Exhibit 1. He described how such records were prepared in the regular course of the Bank's lending business by representatives of the Bank (employees of SSBA, a corporation hired by the Bank as its representative) from sales tickets signed by the credit card holders and mailed to the Bank by the participating merchants, with personal knowledge of such entries, and how such entries were prepared at or near the events reflected therein.

Mr. Decker's testimony included the following:

Q. Mr. Decker, the amounts which are contained over in the right-hand column represent what on all of these computer printouts, that's the dollar figure, $10.51, $4.94, whatever they are, what is that right-hand column on the statement which is set out?

A. They represent the amounts they had on the sales tickets that we received and are posted on their account.

Q. And in effect, when you receive one of these sales tickets, what does the bank do on behalf of its cardholder?

A. We advance the money to our merchant, it's put on a statement, mailed out to our customer.

Q. Do you care whether it was—shows vanilla shakes, trees, or whatever that was done between the merchant and the cardholder?

A. No sir, we do not care.

Q. And the transaction, as far as you are concerned, is what?

A. Cash.

Q. You're lending money?

A. Yes, sir.

Q. Now, at the time that you receive one of these sales tickets, does somebody who is working for the corporation which has been hired by the bank have personal knowledge that they are at the time that they enter the sales ticket into the system advancing money on behalf of the guy's name who is on the credit card?

A. Yes, sir, they do.

Q. All right. Now then, at that time then, these particular documents themselves, that is your copy of the statements that are mailed out become the business records of the City National Bank, do they not?

A. Yes, sir.

Q. This is not a computer summary which was drawn up just for the purpose of litigation, this is the bank's business record concerning Mr. Ted Wenk, is it not?

A. That's right.

Q. And every advance that is recorded in order to produce this document was produced either by an employee of the bank or by a company hired by the bank to do this work?

A. Yes, sir.

        *    *    *    *    *    *

Q. So that the—in effect what happens is that there is generated at the computer center in Dallas for the company that is working for the City National Bank a transaction and advancement of money by City National and entry into the computer for the cardholder that you are advancing the money for, isn't that correct?

A. Yes, sir.

Q. Some person working, you don't know the name, but some person has personal knowledge that at the time they put it into the computer that they are sending out $10.61 to Woolco, they are putting into the computer that it's on behalf of Mr. Ted Wenk?

A. Yes, sir.

Defendant's fourth point is overruled.

Defendant's fifth point of error consists of five sub-points (5A) through (5E), each contending there was no evidence or insufficient evidence to support certain findings.

In determining these sub-points of error, we are mindful of the rule that in determining a "no evidence" point, which is a question of law, the appellate court will consider only the evidence and inferences which such evidence reasonably permits that will support the challenged findings, disregarding all evidence and inferences to the contrary. *Lucas v. Hartford Accident & Indemnity Co.*, 552 S.W.2d 796, 797 (Tex. 1977); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

In determining an "insufficient evidence" point, which is a question of fact, we consider and weigh all the evidence in the case to determine whether the evidence is factually insufficient to support a finding of a vital fact or the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust and that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, supra; *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■■■ After a review of the entire record we cannot agree with Wenk's contention that there was no evidence or insufficient evidence to support the following findings: that defendant entered into a contract with or was otherwise liable to plaintiff (5A); that $650.00 was a reasonable amount of attorney's fees (5C); that any money or credit was advanced to defendant from plaintiff or that any such sums remained unpaid (5E). The findings

referred to in such sub-points are each supported by evidence of probative force and the sub-points are overruled. There was sufficient evidence to support a finding that $650.00 was a reasonable amount of attorney's fees in this case. Thomas Watkins, the attorney for the plaintiff, testified that he is familiar with the prices that are charged for legal services rendered in Travis County, and that in his opinion, one third of the amount collected in the final judgment is reasonable and normal based upon the usual practice in Travis County. The usual and customary fee shall be presumed to be reasonable unless rebutted by competent evidence, Article 2226 (Vernon 1980 Supp.), and defendant Wenk presented no evidence rebutting Mr. Watkins' evidence regarding what is usual and customary in Travis County. Furthermore, a court of civil appeals, in determining whether an award of attorney's fees is excessive, has the authority to look to the entire record in the case before them, and to view the matter in the light of the testimony, the record before them, the amount in controversy, and their own common knowledge and experience as lawyers and judges. *Southland Life Ins. Co. v. Norton*, 5 S.W.2d 767, 769 (Tex.Comm'n App.1928, holding approved), remittitur ordered 9 S.W.2d 752; *McFadden v. Bresler Malls, Inc.*, 548 S.W.2d 789, 790 (Tex.Civ.App.— Austin 1977, no writ).

■■■ Sub-point (5D) alleges that the trial court erred in rendering judgment for plaintiff because there was no evidence or insufficient evidence to support a finding that goods or services were sold or delivered to the defendant nor that the price was reasonable. This sub-point is immaterial since the plaintiff's recovery is for money or credit advanced as a loan to Mr. Wenk and not for goods or services sold or delivered to him.

■■■ Sub-point (5B) challenges the award in the judgment of $1,931.02 as the principal amount due, this being the principal sum plead for in plaintiff's original petition. Evidence of the principal sum due is shown by the Master Charge statement and

the Visa statement introduced as a part of Plaintiff's Exhibit No. 1; when the total figures on those two statements are added ($875.38 on Master Charge and $1,037.27 on Visa), the principal sum due under the proof adduced is $1,912.65, an amount $18.37 less than the amount of the judgment award. Plaintiff Bank agrees that the judgment award is excessive in the amount of $18.37 and has offered to file a remittitur of such amount.

A reviewing court may reduce the amount of the trial court's judgment to conform to the evidence. In doing so, we are empowered to reform the judgment entered to conform to the judgment the trial court should have entered. *McDaniel v. Castro County*, 514 S.W.2d 488, 491 (Tex. Civ.App.—Amarillo 1974, writ ref'd n.r.e.); *Bridwell v. Bernard*, 159 S.W.2d 981, 985 (Tex.Civ.App.—Fort Worth 1942, writ ref'd w.o.m.); 6 Tex.Jur.3d, *Appellate Review* § 811.

The trial court's judgment is reformed to award plaintiff Bank judgment in the total sum of $2,723.51 (instead of $2,741.88) which includes plaintiff's principal claim of $1,912.65 (instead of $1,931.02). Otherwise the judgment of the trial court is in all things affirmed.

Reformed, and as reformed, affirmed.