**SIPCO SERVICES MARINE, INC. F/K/A Sipco Services, Inc., Appellant,**

v.

**WYATT FIELD SERVICE COMPANY, Appellee.**

No. 01–91–00916–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 25, 1993.

Rehearing Denied April 1, 1993.

J. Ben Shapiro, Jr., Shapiro, Fussell, Wedge & Smotherman, Atlanta, GA, Miles O. Smith, Houston, for appellant.

C. Aldine Hammaker, Hutcheson & Grundy, Houston, for appellee.

## OPINION ON REHEARING

SAM BASS, Justice.

After a nonjury trial, the judge ruled for appellee (Wyatt) on its contract claim and awarded damages of $40,488 plus attorney's fees. We reform the judgment to make the award of attorney's fees to Wyatt on appeal to the supreme court con-

ditional on Sipco's appeal being unsuccessful, and as reformed, we affirm.[1]

### FACTS

In early July of 1987, Wyatt solicited bids from various subcontractors for the external painting and internal lining of two storage tanks to be constructed at the Shell—Deer Park plant. On July 10, 1987, Wyatt telephoned appellant (Sipco) and asked Sipco to submit a bid immediately. Based on information provided by Wyatt, Sipco submitted a written bid of $477,700 on July 13, 1987.

Six contractors originally submitted bids, and two were lower than Sipco's. However, Wyatt contended at trial that it relied on Sipco's bid because the lower bidders were financially unstable, had questionable performance records, or were unacceptable to the owner. Sipco argued that the two lower bids were acceptable because both contractors offered to obtain performance and payment bonds, and one offered an extended warranty on the project.

Wyatt used Sipco's $477,700 bid to calculate its bid for its own work on the project, and submitted its bid to S.I.P., the general contractor. S.I.P. orally awarded the contract to Wyatt on August 14, 1987. Sipco knew Wyatt had used its bid in Wyatt's own project estimates, and also knew Wyatt was awarded the project. Wyatt signed a written contract with S.I.P. on September 8, 1987. Wyatt's engineers then finalized the storage tank's design sketches.

Around September 11, 1987, Wyatt provided all bidders the final, detailed drawings of the storage tanks and requested a "confirmation" of the subcontractor's respective bids. Wyatt's agent testified that this resolicitation was meant to prevent changes in the bids submitted. Sipco argues that Wyatt's request or resolicitation of new bids was a rejection of the original bids, and that these final drawings introduced complex new requirements that Sipco had not anticipated when preparing its original bid.

After receiving the updated drawings, Sipco did not rebid, but did propose a price *reduction* from its original bid if a less expensive lining was used. Wyatt understood this correspondence to be a reconfirmation of Sipco's $477,700 bid from July. Sipco, on the other hand, argued that its failure to rebid a new (higher) price was *not* a confirmation of its old bid. Instead, Sipco argued no bid was made because the new requirements would have increased Sipco's bid, and Sipco believed that Wyatt already considered Sipco's July bid to be too high. To show its reliance, Wyatt argued at trial that it never expressly rejected Sipco's July offer, but a Wyatt employee testified that while The main goal of the September resolicitation was to maintain the July price of $477,700, Wyatt hoped to receive a lower bid.

On November 11, 1987, Wyatt telephoned Sipco and orally awarded Sipco the painting/lining project. The trial judge found that the several months between the bidding and the November phone call was a reasonable period of time. Also on November 11, Wyatt sent the proposed subcontract to Sipco. Wyatt argued that this written contract was a mere formality, as the contract was formed when Wyatt orally awarded the bid to Sipco. Sipco argued that there was never any oral or written contract formed due to the complex changes and cost increases the new drawings involved.

The parties met on November 18, 1987, to discuss their differences. At this meeting, Sipco requested an additional $156,467 to cover increases in labor and material costs (for a total bid of $634,167). After discussing this price increase, Sipco agreed to absorb the extra work costs if Wyatt would pay $82,500 for the increased cost of the tank lining material, Plasite 4300, amounting to a revised bid of $560,200. (Sipco claimed the price of the material had risen during the time between its bid and Wyatt's acceptance.) Wyatt asked S.I.P. to authorize and accept the $82,500 increase, but because Sipco had failed to provide

---

1. We withdraw our prior opinion.

verification of this alleged price increase for the Plasite 4300, S.I.P. refused.

On December 3, 1987, Wyatt received confirmation of a bid from another subcontractor, TIPCO, to do the work for $518,188. On December 30, 1987, Wyatt asked S.I.P. to allow TIPCO to replace Sipco, and perform the painting and lining work. S.I.P. approved, but required Wyatt to absorb the difference between TIPCO's replacement bid of $518,188 and Sipco's original bid of $477,700, a total of $40,488. In late January of 1988, Wyatt notified Sipco that Wyatt would hold Sipco responsible for that $40,488 difference.

Sipco and Wyatt met in February of 1988 to discuss Sipco's obligation to perform the work as bid in July. At this meeting, Sipco indicated its continued interest in the project, but complained of the drafted subcontract prepared by Wyatt in November of 1987. Sipco contended that several key provisions materially changed the original specifications on which Sipco had based its July bid. Wyatt claimed that the drafted subcontract contained no material changes and was but a mere formality anyway, as a contract had already been formed on the basis of promissory estoppel.

In March of 1988, Wyatt and TIPCO contracted for the painting/lining work. After completion of the work in December 1988, Wyatt demanded payment of $40,488, and then brought this suit.

## I. Points of error one, three, and six.

In its first point of error, Sipco asserts it deserved a directed verdict because Wyatt waived its promissory estoppel claim by engaging in "bid shopping" and "bid chiseling." In its third point of error, Sipco asserts it deserved a directed verdict because Wyatt did not reasonably rely on Sipco's bid. In its sixth point of error, Sipco asserts it deserved a directed verdict because Wyatt failed to prove its damages.

### A. Was promissory estoppel waived by "bid shopping" and "bid chiseling?"

Sipco contends Wyatt waived its promissory estoppel claim by "bid shopping" or "bid chiseling."

■ The elements of promissory estoppel are; (1) a promise, (2) foreseeability of reliance by the promisor, and (3) substantial reliance by the promisee to its detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983); *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 707 (Tex.App.—Houston [1st Dist.] 1988, writ denied). The promise will be enforced if necessary to avoid injustice. *Adams*, 754 S.W.2d at 707. Reliance on the promise must be reasonable. *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 317 (Tex.App.—Tyler 1985, no writ); *Thate v. Texas & Pac. Ry.*, 595 S.W.2d 591, 595–96 (Tex.Civ.App.—Dallas 1980, writ dism'd).

Sipco argues that Wyatt's "bid shopping" and "bid chiseling" show that Wyatt did not rely on Sipco's bid. Sipco relies on *Preload Technology, Inc. v. A.B. & J. Construction Co.*, 696 F.2d 1080 (5th Cir.1983), but that case cites no Texas authority holding that bid shopping/chiseling limits the equitable estoppel doctrine.

One Texas case discusses briefly bid shopping and bid chiseling. *Traco, Inc., v. Arrow Glass Co.*, 814 S.W.2d 186 (Tex. App.—San Antonio 1991, writ denied). In *Traco*, a subcontractor (Arrow) sued a supplier (Traco) for Traco's failure to supply doors at the quoted price. *Id.* at 187. After a bench trial, the judge ruled for Arrow on promissory estoppel grounds. *Id.* Traco claimed it had conclusively proved that Arrow engaged in bid chiseling and thus had unclean hands. *Id.* at 188. The appellate court concluded that there was sufficient evidence to uphold the trial court's findings. *Id.* at 193. There is little guidance in *Traco* regarding whether or how bid shopping can defeat a claim based on equitable estoppel.

In *Preload*, a general contractor sued a subcontractor, alleging breach of contract and promissory estoppel after the subcontractor refused to perform the work as he had bid. *Preload*, 696 F.2d at 1083–84. At trial, the general contractor (Preload) won on both the breach of contract and estoppel claims. *Id.* at 1084. In affirming judg-

ment, the court discussed limitations on the promissory estoppel doctrine, including bid shopping and chiseling. *Id.* at 1088–91.

The *Preload* court referred to "bid shopping" as "a general contractor's seeking of bids from subcontractors other than the one whose bid amount the general used in calculating its own bid, and often involves the general's informing the other subcontractors of the amount of the low bid and inviting them to undercut it." *Id.* at 1089.

■ The evidence conflicts on whether Wyatt solicited bids from other contractors for the purpose of undercutting Sipco's bid. Wyatt's representative admitted that getting lower bids was one reason for the resolicitation of bids; however, he claimed the changes made in the final sketches and the lapse of time were also reasons for the September resolicitation. Moreover, Sipco did not prove that Wyatt told other subs of the Sipco bid. Nor did Sipco prove that Wyatt invited other subcontractors to undercut the Sipco bid of $477,700. Thus, Sipco failed to prove "bid shopping" conclusively, as a matter of law.

■ The *Preload* court defined "bid chiseling" as "a general contractor's attempt to negotiate a lower price than that bid from the subcontractor whose bid figure the general employed in calculating its own bid, frequently by threatening to subcontract the work to a third party." *Preload*, 696 F.2d at 1089. Thus, to establish "bid chiseling," Sipco had to show (1) Wyatt attempted to get Sipco to lower its bid, and (2) Wyatt threatened to hire another company if Sipco would not reduce its bid.

■ There was evidence that Wyatt sought bids from Sipco and others for less than $477,700. However, the evidence was in dispute regarding whether Wyatt threatened to hire another painting subcontractor unless Sipco lowered its bid. Sipco's evidence created a fact issue for the judge to resolve, but Sipco did not conclusively prove either bid shopping or bid chiseling as a matter of law. Thus, the judge correctly denied the motions for directed verdict and for judgment.

**B. Was Wyatt's reliance reasonable?**

■ In its third point of error, Sipco claims Wyatt failed to prove that its reliance on Sipco's bid was reasonable. Sipco contends Wyatt's reliance was unreasonable because Sipco was not the lowest responsible bidder.

Two other subcontractors, Corrosion Eliminators and SSPC, submitted lower bids than Sipco in July 1987. The evidence conflicts, however, regarding whether these companies could adequately perform the jobs.

Evidence showed that Corrosion Eliminators was financially weak. Also, Wyatt was unfamiliar with Corrosion Eliminator's performance and reputation as a lining contractor. Further, Wyatt had not solicited a bid from Corrosion, and Wyatt later learned that the customer would not allow Corrosion Eliminators to work on the job.

SSPC was also in financial trouble. Moreover, a Wyatt representative who knew SSPC's work testified it was unsatisfactory.

Sipco offered evidence that Wyatt stated its bid was too high and that Wyatt had two lower bids. Sipco also argued the two lower bids were acceptable to Wyatt because both Corrosion Eliminators and SSPC had offered to obtain performance and payment bonds, and Corrosion Eliminators was willing to extend its warranty on the project. Sipco contends that, as a matter of law, it was unreasonable for Wyatt to rely on its bid because Wyatt had lower bids. We disagree.

Neither a performance bond nor a payment bond nor a warranty is a substitute for good performance. Wyatt needed a good job, not a good bond or a good warranty. We decline to hold that a contractor is barred from invoking the estoppel doctrine except against the lowest bidder, without regard for quality, financial stability, customer satisfaction, and other factors that weigh heavily in selecting a subcontractor.

An instructed verdict was required only if Sipco proved its right to judgment as a matter of law. The evidence here is open

to more than one interpretation and fails to conclusively prove, as a matter of law, that Wyatt engaged in "bid shopping" or "bid chiseling," especially when viewed in a light most favorable to Wyatt. Additionally, there was probative evidence that Wyatt's reliance on Sipco's bid of $477,700 was reasonable. We hold the trial judge did not err in denying Sipco's motion for judgment. We further hold that the trial judge's refusal to find Wyatt engaged in bid shopping or chiseling is not so against the great weight of the evidence as to be manifestly unjust. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 652 (Tex. 1988). Nor is a finding that Wyatt reasonably relied on Sipco's bid against the great weight and preponderance of the evidence.

Sipco's first and third points of error are overruled.

### C. Damages.

■ Sipco's sixth point of error contends that, as a matter of law, Wyatt proved no damages. Sipco complains that Wyatt presented no evidence of an executed subcontract between itself and TIPCO, Sipco's replacement, nor did Wyatt prove the amount it paid to TIPCO.

Evidence showed that TIPCO bid $518,-188, which is $40,488 more than Sipco's July bid. The judge awarded that amount as damages. Wyatt's contract administrator, Gerald Cato, testified that Wyatt had to hire TIPCO to perform the work at a cost higher than Sipco's July bid. We hold this is legally sufficient evidence. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987).

The sixth point of error is overruled.

### II. Points of error two, four, and five.

■ In its second, fourth, and fifth points of error, Sipco asserts the trial court erred in *not finding:* 1) that Wyatt's actions in requesting additional and/or new bids after it was awarded the contract by S.I.P. amounted to a rejection of Sipco's bid; 2) that Sipco had the right to refuse to perform because Wyatt's proposed subcontract form was unacceptable to Sipco; and

3) that Wyatt voluntarily broke off subcontract negotiations with Sipco and entered into a subcontract with TIPCO.

The facts in this case were complex; the parties' relationship was ambiguous; and the evidence was conflicting. Whether and when a contract was formed, renegotiated, and terminated was difficult to discern. Some evidence supported Sipco on these points, but it was far from conclusive. The facts above show that a different fact finder might have reached a different conclusion, but they do not show that a rational trier of fact could have ruled only for Sipco. We hold the trial judge did not abuse her discretion and Sipco did not prove its contentions as a matter of law.

Points of error two, four, and five are overruled.

### III. Points of error seven, eight, and nine.

In its seventh point of error, Sipco complains the trial judge erred in awarding attorney's fees of $16,250 because she failed to ascertain whether such fees were customary and reasonable.

■ The findings of fact entered are silent as to the reasonableness and customary nature of the attorney's fees; however, after the trial judge granted Wyatt's request to enter additional findings of fact setting attorney's fees, Sipco never requested any additional or amended findings on this issue. Under these circumstances, the omitted findings are presumed in support of the judgment. TEX.R.CIV.P. 299.

Point of error seven is overruled.

The eighth point of error asserts the trial judge erred in awarding attorney's fees to Wyatt unconditionally, if Sipco appeals. We agree.

■ In *Siegler v. Williams*, 658 S.W.2d 236 (Tex.App.—Houston [1st Dist.] 1983, no writ), we held that a trial judge may not penalize a party for taking a successful appeal. *Id.* at 241. Thus, Wyatt's award of attorney's fees must be conditioned upon Sipco's unsuccessful appeal. *Id.* An un-

conditional award of attorney's fees is improper. *Id.*

■ The error is harmless so far because Sipco's appeal has not succeeded here. However, to the extent this point of error applies to the unconditional award of attorney's fees on appeal to the Texas Supreme Court, it is sustained.

The ninth point of error states that awarding appellate attorney's fees before the appeal occurs denies due process and equal protection rights under the United States and Texas Constitutions. This contention was rejected in *Pullman v. Brill, Brooks, Powell & Yount,* 766 S.W.2d 527, 530 (Tex.App.—Houston [14th Dist.] 1988, no writ), and we reject it for the same reasons.

The ninth point of error is overruled.

We reform the judgment to provide Wyatt will receive attorney's fees on appeal to the Texas Supreme Court only if Sipco does not prevail in that court. As reformed, the judgment is affirmed.

COHEN, J., concurs.

JONES, J., not participating in the opinion on rehearing.

COHEN, Justice, concurring.

I agree with Justice Bass' opinion. This opinion is written to expose what I consider to be weaknesses in current Texas law regarding what must be done to preserve for appellate review a claimed error in overruling a motion for directed verdict.

Texas law has traditionally imposed two requirements on parties appealing the overruling of a motion for directed verdict. The first is that the ruling must appear in the judgment or be recited in a separate order. The second is that a defendant who introduces evidence after the motion for directed verdict is overruled must reurge the motion at the close of the case, or else he waives it. I think those rules should be abandoned.

## REQUIREMENT FOR A SEPARATE ORDER OR JUDGMENT RECITAL

Many Texas cases have held that an order overruling a motion for directed verdict must appear in the judgment or be recited in a separate written order; it is not sufficient that the ruling is recorded fully in the statement of facts. *Wal–Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 590 (Tex.App.— Texarkana 1992, writ requested, Aug. 18, 1992); *Soto v. Southern Life & Health Ins., Co.,* 776 S.W.2d 752, 754 (Tex.App.— Corpus Christi 1989, no writ); *Pierce v. Gillespie,* 761 S.W.2d 390, 396 (Tex.App.— Corpus Christi 1988, no writ); *Superior Trucks, Inc. v. Allen,* 664 S.W.2d 136, 145 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Steed v. Bost,* 602 S.W.2d 385, 387 (Tex.Civ.App.—Austin 1980, no writ); *Southwestern Materials Co. v. George Consol. Inc.,* 476 S.W.2d 454, 455 (Tex.Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

This requirement seems to have been created and enforced solely by the intermediate appellate courts. I have found no supreme court authority for the rule. If there is today a reason for the rule, I cannot discern it. The rule has been criticized by commentators as being unfair, unnecessary, and contrary to statutory authority. MICHAEL A. HATCHELL AND LORI M. GALLAGHER, TEN WORST TRAPS—AND A FEW RUNNERS UP! (State Bar of Texas, Advanced Civil Appellate Practice Course A–6 (September, 1992). The rule seems to have first appeared in its present form in *Southwestern Materials.* That opinion cited two cases as authority for the rule, but neither case supports it. In *Ellis Drilling Corp. v. McGuire,* 321 S.W.2d 911, 912 (Tex.Civ. App.—Eastland 1959, writ ref'd n.r.e.), the court merely held that the motion was waived because it was never presented and overruled. The same is true of *Lewis v. Smith,* 198 S.W.2d 598, 600 (Tex.Civ. App.—Fort Worth 1946, writ dism'd). Nevertheless, the rule created in *Southwestern Materials* has been repeatedly applied without being explained or justified.

I know of no reason why an oral ruling that is fully recorded in the statement of facts will not preserve error in overruling a motion for directed verdict. Two different parts of Tex.R.App.P. 52 indicate that is sufficient.

Rule 52(a) provides:

In order to preserve a complaint for appellate review, a party must have *presented to the trial court a timely request, objection or a motion*, stating the specific grounds for the ruling he desires the court to make ... It is also necessary for the complaining party *to obtain a ruling upon the parties request, objection or motion ... It is not necessary to formally except to rulings or orders of the trial court.*

(emphasis added.)

SIPCO complied with this rule. It made a motion and obtained a ruling; it should not have to formally except to the oral ruling by getting a written order to memorialize it.

Moreover, the requirement for a separate written order is inconsistent with Tex. R.App.P. 52(c)(10), which provides:

Anything occurring in open court or chambers that is reported and so certified by the court reporter may be included in the statement of facts rather than a formal bill of exception ...

Thus, a party should not have to obtain a written order, which is like a formal bill of exception, in order to show what is already shown by the statement of facts.

### WAIVER BY PRESENTING EVIDENCE

The second rule limiting appellate review is that a party who introduces evidence after the motion is overruled must reurge the motion at the close of all evidence, or else waive review. *Bryan v. Dockery,* 788 S.W.2d 447, 449 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Texas Steel Co. v. Douglas,* 533 S.W.2d 111, 114 (Tex.Civ. App.—Fort Worth 1976, writ ref'd n.r.e.). SIPCO introduced evidence after its motion

was overruled and did not reurge the motion at the close of all evidence.

Like the previous rule, this requirement also seems to have been created and enforced solely by the intermediate appellate courts. Courts have applied the rule in both jury and nonjury trials. *Wenk v. City Nat'l Bank,* 613 S.W.2d 345, 348 (Tex.Civ. App.—Tyler 1981, no writ); *Horizon Properties Corp. v. Martinez,* 513 S.W.2d 264, 265 (Tex.Civ.App.—El Paso 1974, writ ref'd n.r.e.); *Thornhill v. Elskes,* 412 S.W.2d 73, 74 (Tex.Civ.App.—Waco 1967, no writ).

On original submission, we applied the rule in *Bryan v. Dockery* and held that SIPCO waived appellate review because it introduced evidence after the judge overruled its motion for directed verdict and did not reurge its motion for directed verdict at the close of all evidence. I now believe that following this rule in a nonjury case, as we originally did, would conflict with Tex.R.App.P. 52(d).

A motion for directed verdict is a complaint that the plaintiff's evidence was legally insufficient. Since its amendment effective September 1, 1990, rule 52(d) has provided in pertinent part as follows:

A party desiring to complain on appeal in a nonjury case that the evidence was legally or factually insufficient to support a finding of fact, that a finding of fact was established as a matter of law or was against the overwhelming weight of the evidence shall not be required to comply with paragraph (a) of this rule.

Rule 52(a) requires a party to complain in the trial court in order to preserve issues for appellate review. Rule 52(d) excuses parties in nonjury cases from that requirement when they complain of legally or factually insufficient evidence. Thus, rule 52(d), as I understand it, says that no predicate is required for SIPCO to raise its complaint. If no predicate is required, SIPCO's failure to renew its motion at the close of all evidence should not constitute a waiver.[1] Thus, I would hold that the cases

---

**1.** The same is true of a movant's failure to attain a written order overruling its motion for directed verdict. If, in a nonjury trial, a party does not have to move for directed verdict to com-

plain of insufficient evidence, it certainly should not have to obtain a written order overruling the unnecessary motion.

applying the rule in *Bryan v. Dockery* to nonjury cases are no longer good law because they require the defendant to do more than rule 52(d) requires. Consequently, I would decline to follow them, and instead hold that the insufficient evidence complaint was preserved for review, even though SIPCO presented evidence and did not renew its motion at the close of all evidence.

This holding, however, would raise questions about the standard of review. In deciding legal sufficiency, should the appellate court consider all the evidence, including evidence introduced after the judge denied the motion, or only the evidence as it stood when the judge denied the motion for directed verdict?

In *San Antonio Traction Co. v. Kelleher*, 48 Tex.Civ.App. 421, 107 S.W. 64 (1908, writ dism'd), the court held that all the evidence should be considered, no matter when the motion for directed verdict was made. The court wrote:

In the absence of such proof at the time plaintiff closed his testimony, we think that the court should have granted defendant's motion to instruct a verdict in its favor. But it does not follow from this that the judgment should be reversed on this assignment of error. To have effected such results the defendant should have rested its case upon the refusal of the court to grant the motion to instruct a verdict in its favor upon the close of plaintiff's testimony. Instead of doing so the defendant introduced its evidence. The effect of this was to waive its right to have the judgment reversed on account of the error of the court in refusing its peremptory instruction, if the plaintiff's evidence, together with that introduced by the defendant, was sufficient to carry the case to the jury on any one or more of the alleged grounds of negligence. *Grooms v. Neff Harness Co.*, 79 Ark. 401, 96 S.W. 135. The question as to whether the evidence, after the introduction of all the testimony, was sufficient to require a submission of the case to the jury, will be determined in considering subsequent assignments.

107 S.W. at 66. The *Kelleher* court cited with approval the rule in *Grooms v. Neff Harness Co.*, 79 Ark. 401, 96 S.W. 135 (1906) (op. on reh'g). There, the Arkansas Supreme Court relied on three decisions by the United States Supreme Court, and held:

[I]n testing the sufficiency of the evidence, the court must consider all the evidence, whether introduced by the plaintiff or by the defendant. So, in testing the correctness of the trial court in denying a request for peremptory instruction, regardless of the time when the request is made, this court must look to all the testimony introduced, and will not reverse the case on account of the trial court's refusal to give the request, even though the evidence was insufficient at the time the request was made, if upon the whole case there is sufficient [evidence] to sustain the verdict.

96 S.W. at 137.

This is still the rule in federal courts. *Farley Transp. Co. v. Santa Fe Transp. Co.*, 786 F.2d 1342, 1345 n. 1 (9th Cir.1985); *see also* 5A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 50.05F(1) (1992); 9 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2534 (1971). The federal cases rely on *Bogk v. Gassert*, 149 U.S. 17, 13 S.Ct. 738, 37 L.Ed. 631 (1892), which held:

Without going into the question whether the motion was properly made in this case, it is sufficient to say that the defendant waived it by putting in his testimony. A defendant has an undoubted right to stand upon his motion for a non suit, and have his writ of error if it be refused; but he has no right to insist upon his exception, after having subsequently put in his testimony and made his case upon the merits, since the court and jury have the right to consider the whole case as made by the testimony. It not infrequently happens that the defendant himself, by his own evidence, supplies the missing link, and, if not, he may move to take the case from the jury upon conclusion of the entire testimony.

149 U.S. at 23, 13 S.Ct. at 739.

Texas criminal courts follow the same rule. *Degarmo v. State*, 691 S.W.2d 657,

661 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985); *Kuykendall v. State,* 609 S.W.2d 791, 794 (Tex.Crim.App.1981). However, several judges on this court, myself included, have stated that in criminal cases, the rule violates the constitutional protection against double jeopardy because it gives the State two chances to prove its case. *Herbert v. State,* 827 S.W.2d 507, 508, 509–12 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *Winter v. State,* 725 S.W.2d 728, 731–34 (Tex.App.—Houston [1st Dist.] 1986, no pet.) (Cohen, J., concurring).

I question the rule in *Bogk.* 149 U.S. at 23, 13 S.Ct. at 739. The rule in *Bogk* is based on the premise that "the court and jury have the right to consider the whole case as made by the testimony." *Id.* The premise is flawed to the extent it relies on any right of the jury. If the jury's right to consider the whole case were paramount, we would not give trial and appellate judges the right under any state of the evidence to set aside a jury's verdict or to direct verdicts in the first place.

As for the court, why should a judge have the right to consider the whole case when there would be no "whole case" except for the judge's erroneous denial of the motion for directed verdict? If the plaintiff presents insufficient evidence and the defendant points that out by moving for directed verdict, there should be no defendant's evidence. The defendant should not even be there. The trial should have ended, and the defendant should have been discharged. As I have stated in the criminal law context,

> By considering later presented evidence to decide sufficiency, the courts allow the State to benefit both from its own failure to present sufficient evidence and from the trial judge's erroneous denial of the defendant's constitutional right to an acquittal. This case is a typical example of harm from such error: the judge's erroneous ruling forced the defendant to testify and now the State seeks to use that testimony to cure the insufficiency of its own evidence.

*Herbert,* 827 S.W.2d at 511 (Cohen, J., concurring). If the word "plaintiff" is substituted for "State" and the reliance on the double jeopardy provision is removed, the same considerations apply in a civil case.

Reviewing the evidence after the erroneous denial of a motion for directed verdict puts the defendant to an unfair choice: surrender the right to be heard or risk waiving the insufficiency of the evidence by presenting its own evidence. Unfortunately, under present law, giving up the right to be heard is "the price which must be paid" by the defendant to appeal the judge's refusal to direct a verdict at the conclusion of the plaintiff's case. DAVID B. HARRISON, ANNOTATION, PROPRIETY OF DIRECTION OF VERDICT IN FAVOR OF FEWER THAN ALL DEFENDANTS AT CLOSE OF PLAINTIFF'S CASE, 82 ALR3d 974, 981 (1978). Why should a defendant suffer that choice when the plaintiff's evidence was insufficient and the trial judge failed to recognize it? No one would argue that a defendant should suffer a judgment when the evidence is insufficient, and no one would argue that a defendant should not be allowed to present evidence. Why, then, would anyone say that a defendant can enjoy one of these rights, but not both? *Cf. Simmons v. United States,* 390 U.S. 377, 389–94, 88 S.Ct. 967, 973–76, 19 L.Ed.2d 1247 (1968) (criminal defendant's incriminating testimony at pretrial motion to suppress hearing could not be used against the nontestifying defendant at trial because that would force him to give up his fifth amendment right against self-incrimination in order to assert his fourth amendment right against illegal search and seizure). This situation is comparable to one where the judge erroneously overrules an objection to evidence and the objecting party then presents more evidence about the same fact to rebut, minimize, or explain the erroneously admitted evidence. In that case, the objecting party does not waive the judge's error in admitting the evidence. This sound rule is recognized in civil and in criminal cases. *See Harrison v. United States,* 392 U.S. 219, 222–26, 88 S.Ct. 2008, 2010–12, 20 L.Ed.2d 1047 (1968); *Valcarcel v. State,* 765 S.W.2d 412, 417–18 (Tex.Crim.App.1989); *Roosth &*

*Genecov Production Co. v. White,* 152 Tex. 619, 262 S.W.2d 99, 104 (1953); *Miller v. State,* 786 S.W.2d 494, 496–97 (Tex. App.—San Antonio 1990, no pet.); *D.L.N. v. State,* 590 S.W.2d 820, 823 (Tex.Civ. App.—Dallas 1979, no writ). The cases recognize reality: the erroneous ruling forced the objector to present the evidence or risk even greater harm from having it go unanswered. The same is true of a party forced to present its entire case after a motion for directed verdict is wrongfully denied.

To determine legal sufficiency, I would review only the evidence as it stood when the motion for directed verdict was denied. If the defendant did not move for directed verdict at the close of the plaintiff's case, then I would review all of the evidence presented. In my opinion, these considerations apply to both nonjury and jury cases. Thus, I would apply the same rule in jury cases, even though they are not covered by the last sentence of rule 52(d).

I concur in the judgment here because under either standard, whether judging the evidence as a whole or as it stood when the motion for directed verdict was overruled, it was sufficient.